## ORIGINAL

James H. Fosbinder #7070
Rhonda M. Fosbinder #6986
IVEY FOSBINDER FOSBINDER LLLC
A LIMITED LIABILITY LAW COMPANY
1883 Mill Street
Wailuku, Hawaii 96793
Telephone: (808)242-4956
Facsimile: (808)249-0668
E-mail:     jfosbinder@iff-law.com
            rfosbinder@iff-law.com

Attorneys for Plaintiff
SKYLINE ZIPLINE GLOBAL, LLC

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 08 2012

at____o'clock and __26__min. ____M.
SUE BEITIA, CLERK

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SKYLINE ZIPLINE GLOBAL, LLC, | Civ. No.: **CV12-00450 JMS BMK** |
| Plaintiff, | |
| v. | COMPLAINT; DEMAND FOR JURY TRIAL; EXHIBITS "A" – "B"; SUMMONS |
| TODD DOMECK; EXPERIENTIAL RESOURCES, INC.; GO ZIP, LLC; MAUI LAND AND PINEAPPLE COMPANY, INC.; KAPALUA LAND COMPANY, LTD.; PIIHOLO RANCH, LLC; PIIHOLO CLASSIC, LLC; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; and DOE PARTNERSHIPS 1-10, | |
| Defendants. | |

## COMPLAINT

Plaintiff SKYLINE ZIPLINE GLOBAL, LLC, by and through its attorneys at IVEY, FOSBINDER, FOSBINDER LLLC, a Limited Liability Law Company, for its Complaint against Defendants TODD DOMECK, EXPERIENTIAL RESOURCES, INC., GO ZIP, LLC, MAUI LAND AND PINEAPPLE COMPANY, INC., KAPALUA LAND COMPANY, LTD., PIIHOLO RANCH, LLC and PIIHOLO CLASSIC, LLC hereby allege and aver as follows:

## NATURE OF THIS ACTION

1.    This is an action for patent infringement arising under the Patent Laws of the United States as set forth in Title 35 of the United States Code, Section 271 *et seq.*, breach of contract, misappropriation of trade secrets, confidential information and/or intellectual property, and unfair competition under Hawaii State statutory and common law.

## PARTIES

2.    Defendant SKYLINE ZIPLINE GLOBAL, LLC is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business located at 300 Plaza Drive, Vestal, New York, 13850. Skyline Zipline Global, LLC is the successor in interest in and to Skyline Eco-Adventures, Ltd. (collectively, "*Plaintiff*" or "*Skyline*").  Skyline is the owner of

U.S. Patent No. 7,819,066 ("*the '066 Patent*"). Skyline's zipline courses incorporate patented zipline trolleys, and proprietary spring and electromagnetic braking systems. Plaintiff proprietary zipline technologies allow for higher landing speeds than existing zipline technology. Plaintiff Skyline is the owner of confidential and proprietary intellectual property regarding zipline technologies, and owns intellectual property assigned to it from Cougar Mountain Adventures, Ltd. ("*Cougar Mountain*"), Skyline Eco-Adventures Holdings, Ltd. ("*Skyline Eco-Adventures*"), and Skyline Ziplines USA, LLC ("*Skyline USA*").

3.      Defendant TODD DOMECK ("*Domeck*") is a citizen and resident of Indiana, having an address of 7125 Lucas Road, Bloomington, Indiana 47401. Upon information and belief, Domeck is or has been residing on the island of Maui, in the State of Hawaii. At all relevant times, Domeck owned, managed, and operated Defendant Experiential Resources, Inc. and Defendant GoZip, LLC.

4.      Defendant EXPERIENTIAL RESOURCES, INC. ("*ERi*") is a corporation and existing under the laws of the State of Indiana, having a principal place of business located at 5302 West State Road 45, Nashville, Indiana 47448. Upon information and belief, ERi maintains an office and conducts business at 800 Office Road, Lahaina, Hawaii 96761. Upon information and belief, ERi is wholly-owned and controlled by Domeck. At all relevant times, ERi has conducted business in the District of Hawaii using, offering for sale, selling, distributing,

installing, operating and/or maintaining zipline courses and zipline trolleys. On its website, ERi touts zipline courses at Kapalua Adventures and Piiholo Rang as its latest zipline tours.

5.     Defendant GOZIP, LLC ("*GoZip*") is a limited liability company organized and existing under the laws of the State of Hawaii, having a principal place of business located at 800 Office Road, Lahaina, Hawaii 96760 (the same office address used by ERi) and also does business under the domains <www.gozipoahu.com> and <www.goziphawaii.com>, including, upon information and belief, conducting business in the District of Hawaii using, offering for sale, selling, distributing, installing, operating and/or maintaining zipline courses and zipline trolleys.  Upon information and belief, GoZip is wholly-owned and controlled by Domeck. On its websites, GoZip touts the zipline course at Kapalua.

6.     Defendants PIIHOLO RANCH, LLC and PIIHOLO RANCH CLASSIC, LLC (collectively referred to as "*Piiholo Ranch*" or "*the Piiholo Ranch Defendants*") are limited liability companies organized and existing under the laws of the State of Hawaii, which share a principal place of business at 1156 Makawao Avenue, Makawao, Maui, Hawaii.   Upon information and belief, Defendant Piiholo Ranch, LLC owns the Piiholo Ranch zipline course, which is located on Piiholo Ranch at 325 Waiahiwi Road, Makawao, Hawaii 96768.

7.    Defendant MAUI LAND & PINEAPPLE COMPANY, INC. ("**MLPC**") is a corporation organized and existing under the laws of the State of Hawaii, having a principal place of business at 870 Haliimaile Road, Makawao, Maui, Hawaii 96768-9768.   MLPC is a land holding and operating company. Upon information and belief and according to its website, it operates the Kapalua Resort Community.   MLPC has a principal subsidiary, Defendant Kapalua Land Company, Inc.

8.    Defendant KAPALUA LAND COMPANY, INC. ("*Kapalua Land*") is a corporation organized and existing under the laws of the State of Hawaii, also having a principal place of business located at 870 Haliimaile Road, Makawao, Maui, Hawaii 96768-9768.   According to the website of Defendant MLPC and its filings with the United States Securities and Exchange Commission, Defendant Kapalua Land is the principal operating subsidiary of Defendant MLPC. Defendant Kapalua Land develops and operates the Kapalua Resort, which is owned by Defendant MLPC.   Kapalua Land conducts business under the trade name "Kapalua Adventures" and is registered under this trade name with the State of Hawaii Department of Commerce and Consumer Affairs, Business Registration Division.

9.    Defendants MLPC, Kapalua Land and Kapalua Adventures share a mailing address of P.O. Box 187, Kahului, Hawaii 96733, and are registered as

such wit hthe State of Hawaii Department of Commerce and Consumer Affairs, Business Registration Division. The two companies also share the same corporate officers. Kapalua Adventures has a principal place of business at the Kapalua Report Community at 2000 Village Road, Lahaina, Maui, Hawaii 96761. Upon information and belief, Kapalua Adventures is or has operated the Kapalua Adventures zipline course. Defendants MLPC and Kapalua Land collectively may be referred to herein as "the *Kapalua Defendants*".

10.     Defendants JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, and DOE PARTNERSHIPS 1-10 (collectively "*DOE Defendants*"), inclusive, are individuals, partnerships, corporations, associations or any other entity. Plaintiff reserves the right to amend this Complaint to add any such party as described in this paragraph as such party's identity is ascertained through discovery or otherwise.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338; and §1367.

12.     This Court also has *in personam* jurisdiction over Defendants because Defendants have resided, worked, maintained citizenship, been organized and/or conducted business in the District of Hawaii.

13. At all relevant times, one or more Defendants resided, worked, maintained citizenship, was organized and/or conducted or transacted business in the District of Hawaii. A substantial part of the events giving rise to this action occurred in the District of Hawaii. Accordingly, venue is proper in the District of Hawaii pursuant to 28 U.S.C. § 1391.

14. Plaintiff is further informed and believes that consumers located in the State of Hawaii and elsewhere interact with website owned by Defendant, located at "www.goziphawaii.com", by searching for, requesting and/or purchasing Defendant's services.

## BACKGROUND

**U.S. Patent No. 7,819,066**

15. Plaintiff Skyline Ziplines Global, LLC owns all right, title and interest in and under United States Patent No. 7,819,066 titled ZIPLINE TROLLEY, which was duly and legally issued on October 26, 2010. The named inventor is Kevin Geoffrey Smith ("*Smith*"). A true and correct copy of the '066 Patent is annexed hereto and incorporated herein as Exhibit "A".

16. Prior to forming Plaintiff Skyline, Smith was a principal in Cougar Mountain and, in 2008, assigned his interest in the '066 Patent to a Canadian company that Smith also founded, Skyline Eco-Adventures. Skyline Eco-Adventures assigned its interest in the '066 Patent to Skyline Ziplines Global, LLC

by means of an assignment executed on March 1, 2011, and filed with the U.S. Patent and Trademark Office at Reel/Frame 025934/0169 ("*Assignment*").

17.   By means of the Assignment, Plaintiff Skyline acquired certain intellectual property rights pertaining to zipline technologies from Kevin Smith, Cougar Mountain, Skyline Eco-Adventures, Ltd., and Skyline Zipline USA, LLC, including but not limited to issued U.S. patents and pending patent applications, trade secrets, all claims and causes of action arising out of or related to infringement or misappropriation of the assigned rights, and documentations regarding zipline technologies.   Plaintiff Skyline acquired all rights, benefits, licenses, and obligations owed by third parties to Skyline Eco-Adventures, Ltd., concerning zipline technologies and related information.

18.   Plaintiff Skyline manufactures, markets, offers for sale and sells zipline trolleys for use in recreational facilities.   Plaintiff Skyline provides consultation services to design, engineer, develop, install and/or operate zipline adventure features and canopy tours at resorts, theme parks, casinos, state and national parks and other recreational facilities.   As part of its services, Plaintiff Skyline sells zipline trolleys that are the commercial embodiment of the '066 Patent.

19.   Plaintiff   Skyline's   regular   business   practices   also   include manufacturing course components; shipping the manufactured components to the

zipline course location; installing the course components in accordance with the course design; operating the course; and maintaining the course, once erected and in operation.

**Chronology of Events and Plaintiff's Relationship With Defendants**

20.    During 2006, Cougar Mountain learned that Defendant MLPC was interested in developing part of its Kapalua land on Maui, Hawaii to include a zipline course.

21.    In or around July 2006, Cougar Mountain and Defendants MLPC and Kapalua Land discussed their mutual interest in entering into a business relationship for the purpose of developing and operating a zipline course at Kapalua, on land owned by Defendant MLPC.

22.    In or around July 2006, Smith, on behalf of Cougar Mountain, met with Defendant MLPC representative and Defendant Kapalua Land Chief Financial Officer Thomas J. Selby ("*Selby*") to discuss the development of a zipline course on MLPC's Kapalua property.

23.    During this meeting, Selby indicated that Kapalua Land required an operating partner to manage the zipline course, maintenance, marketing, and other operating tasks.  The parties discussed creating a jointly-owned operating company to accomplish the project.

24.     During Smith's visit to Kapalua, he inspected the proposed zipline course location for site viability, measure the area for creating a course design, and examined the financial viability of developing a zipline course on this site in partnership with Defendants MLPC and Kapalua Land.

25.     Several weeks after this initial meeting, Cougar Mountain prepared and delivered to Defendant Kapalua Land, a course design for the Kapalua zipline course.

26.     In or around July 2006, Defendant Todd Domeck contacted Cougar Mountain seeking business installing Cougar Mountain's zipline courses.

27.     In or around September 2006, Cougar Mountain learned that Defendant Piiholo Ranch, LLC was interested in developing a zipline course on its property at Piiholo Ranch on Maui, Hawaii.  Smith, for Cougar Mountain, traveled to Maui to meet with Jeff Baldwin ("*Baldwin*"), Chief Operating Officer of Defendant Piiholo Ranch, LLC to discuss designing and developing a zipline course for the Piiholo Ranch Defendants.

28.     During this trip, Smith inspected the proposed zipline course location for site viability, measure the area for creating a course design, and examined the financial viability of developing a zipline course on this site in partnership with the Piiholo Ranch Defendants.

29.   Cougar Mountain prepared and delivered to Defendant Piiholo Ranch, LLC a zipline course design for this property.

30.   On or about September 13, 2006, Cougar Mountain and Defendants Domeck and ERi entered into a business relationship, whereby Cougar Mountain planned to utilize Defendants Domeck and ERi as subcontractors for zipline course installation for some of its zipline course projects.

31.   As part of this business relationship, on September 13, 2006, Defendant Domeck executed a Confidentiality Agreement with Cougar Mountain on behalf of ERi.   A true and correct copy of that Confidentiality Agreement is attached hereto as Exhibit "B".

32.   Under the Confidentiality Agreement, ERi agreed to hold in confidence all information provided by Cougar Mountain for the purpose of entering into business with Cougar Mountain, and not use such information for any other purpose, or disclose any such information to any third party.

33.   Under the protection of the Confidentiality Agreement, Cougar Mountain began sharing confidential and proprietary information with Defendants Domeck and ERi relating to zipline course and component design, fabrication, manufacture, assembly, installation, operation and maintenance, including proprietary zipline course and component designs, drawings, photographs, specification, engineering drawings and manufacturing specifications and

tolerances, plans and know-how for designing, manufacturing, fabricating, constructing, assembling, installing, operating and maintaining zipline courses, zipline towers, trolleys, anchor systems, braking systems, electromagnet braking systems, wheels, dies, casts, axels, wheel housings, among other course components, and how to assemble course and system components.

34.     Cougar Mountain also disclosed confidential business contacts and leads and other confidential business information, including confidential project proposals, pricing, sales, marketing, forecasts, financial models, business development plans and other confidential financial and business model information.

35.     In or around September of 2006 through January of 2007, Cougar Mountain paid for Domeck and ERi to travel to Calgary, Alberta, Canada to train on-site with Cougar Mountain in zipline technology, including its Skyline Park zipline course project.

36.     Under the protection of the Confidentiality Agreement, Cougar Mountain disclosed to Domeck and ERi confidential and proprietary information concerning fabrication of the zipline course components, including trolleys, wheels, dies, casts, axels, wheel housing, and how to assemble system components. Cougar Mountain taught Domeck and ERi how to install, operate and maintain zipline course incorporating its proprietary technology.   The newer proprietary

zipline course technologies taught by Plaintiff allow for longer and faster-braking zipline courses.

37.    During Domeck's training in Calgary, Cougar Mountain discussed with Domeck and ERi that Plaintiff Skyline had patents pending on its proprietary zipline technology, including its proprietary trolley and braking system.  Domeck offered to try to obtain patents for Cougar Mountain, but Cougar Mountain declined the offer.

38.    Upon information and belief, prior to the business relationship with Cougar Mountain, Defendants Domeck and ERi did not have work experience in high speed zipline courses.  Rather, Domeck and ERi only had experience working with existing zipline course technology, including slower and shorter half inch cable zipline courses, and existing petzel zipline trolleys that ran at slower speeds and that did not including braking systems, but instead employed gravity braking.

39.    In or around October 2006, under the protection of the Confidentiality Agreement, Cougar Mountain introduced Defendants Domeck and ERi to Defendants MLPC and Kapalua Land.

40.    Cougar Mountain took Domeck and ERi on-site to see the Kapalua property, and planned to involve Domeck and ERi as installation subcontractor for the Kapalua zipline course project.  Under the protection of the Confidentiality Agreement, Cougar Mountain disclosed to Domeck and ERi confidential

information, including the full service drawings for the Kapalua course, and proprietary information for manufacturing, mapping and rigging the Kapalua course.

41.    In or around October 2006, under the protection of the Confidentiality Agreement, Cougar Mountain introduced Defendants Domeck and ERi to the Piiholo Defendants.

42.    Cougar Mountain took Domeck and ERi on-site to see the Piiholo Ranch property, and planned to involve Domeck and ERi as installation subcontractor for the Piiholo Ranch zipline course project.  Under the protection of the Confidentiality Agreement, Cougar Mountain disclosed to Domeck and ERi confidential information, including the full service drawings for the Piiholo Ranch course, and proprietary information for manufacturing, mapping and rigging the Piiholo Ranch course.

43.    On or about October 6, 2006, Cougar Mountain delivered to Defendant Piiholo Ranch, LLC a business plan and proposal for the development of the Piiholo Ranch zipline course, which included discussion of Plaintiff's intellectual property, and terms for the Piiholo Defendants to take a license to Plaintiff's intellectual property as a residual model.  Cougar Mountain understood that Defendant Piiholo Ranch, LLC planned to go forward with the project with

Cougar Mountain after finalizing a real estate deal pertaining to some of the land for the proposed zipline course.

44.     In or around October 2006, Cougar Mountain traveled to Kapalua for a second trip to inspect the site and work on the development agreement and business plan arrangements with the Kapalua Defendants.   Cougar Mountain brought Defendants Domeck and ERi to the Kapalua site.

45.     On or about October 26, 2006, ERi prepared and delivered to Cougar Mountain a build quote for the subcontractor installation work for the Kapalua zipline course, based upon the specifications prepared and designed by Cougar Mountain for the Kapalua course.

46.     On or about October 27, 2006, in preparation for the upcoming meeting of the Kapalua Board of Directors at which Cougar Mountain was scheduled to present the zipline course plans, Cougar Mountain prepared and sent to the Kapalua Defendants a "Skyline Development Proposal".   The Skyline Development Proposal included discussion of Plaintiff's intellectual property, terms for a joint venture with Cougar Mountain for developing and operating the Kapalua course whereby Plaintiff would maintain ownership of its intellectual property, and terms for the Kapalua Defendants to take a license to Plaintiff's intellectual property as a residual model, should Plaintiffs not have ownership interest in the Kapalua zipline project.

47.    On or around early November 2006, Cougar Mountain attended the meeting of the Kapalua Board of Directos and presented the business plan for the development of the Kapalua ziplines.  The business plan included a course design for the Kapalua property, cost analysis for the project and operations, a logistics study projecting volume of users, cash flow and profit analyses, information on how to manage the zipline operations to reduce labor costs, and identified Defendant ERi as a subcontractor installer.

48.    During this meeting, Cougar Mountain specifically stated that it owned intellectual property regarding zipline course designs and components, including its proprietary zipline trolley design, which was incorporated into the business plan.  Cougar Mountain displayed to the Board of Directors a sample trolley and harness of the kind to be utilized in the proposed zipine project.

49.    The Board of Directors sent Smith out of the meeting room, and upon information and belief, voted to move forward with the zipline project with Cougar Mountain, the confirmation of which was communicated to Cougar Mountain immediately thereafter when Smith returned to the meeting room.

50.    On or about December 19, 2006, Cougar Mountain and Defendant MLPC entered into a letter of intent regarding the Kapalua zipline course project and executed a Confidentiality Agreement.

51.     As reflected in the letter of intent, the parties planned to execute a Joint Venture Agreement and an Operating Agreement.   Under these agreements, Cougar Mountain would prepare the zipline course design, each party would contribute to a capital project budget, and each party would fund pre-opening operating expenses.   The Joint Venture Agreement would contain provisions for paying a property lease fee, a management fee and profit sharing between the parties.   Defendant MLPC circulated a draft of the Joint Venture Agreement.

52.     After Cougar Mountain left Kapalua, discussions continued regarding the terms of the proposed Kapalua zipline course and several revisions to the draft agreements circulated.   Discussion continued through January 2007.

53.     In or around February 2007, the Kapalua Defendants stopped communicating with Cougar Mountain, and did not return telephone calls or e-mail messages from Smith.

54.     After Cougar Mountain repeatedly asked the Kapalua Defendants to respond to its communications and offered to travel to Kapalua to close the deal, Selby e-mailed Cougar Mountain stating that a trip to Kapalua was not necessary. Selby assured Smith that the joint venture would continue as planned, but asked that Cougar Mountain wait.

55.    On or around the same time in February 2007, Defendants Domeck and ERi also stopped communicating with Cougar Mountain and did not return telephone calls or e-mails from Smith.

56.    Also   around   that   time,   Piiholo   Ranch   Defendants   ceased communication with Smith and Cougar Mountain.  The Piiholo Defendants did not return telephone calls made by Smith regarding the Piiholo Ranch project.

57.    On or around February 28, 2007, Defendant MLPC sent a letter to Cougar Mountain providing notice that Defendant MLPC was cancelling the letter of intent, effective on March 1, 2007, due to agreements not being finalized within the due diligence period described in the letter of intent.  At this time, it was Cougar Mountain's understanding that the Piiholo Defendants were no longer interested in developing a zipline course.

58.    In or around May 2007, Smith read in a newspaper article that the Kapalua Defendants were developing a zipline course, which became known as a the Kapalua Adventures zipline course.

59.    On or around May 16, 2007, Cougar Mountain contacted Defendant Domeck and ERi via e-mail to ask whether Defendants Domeck and ERi were involved in the Kapalua Adventures zipline course development.  Domeck and ERi communicated that they were not working on the Kapalua project.  Based on this representation by Domeck and ERi, Cougar Mountain believed that the zipline

course was developed by a third party and had no reason to belief that the course would include its confidential information and proprietary technology.

60.    It was not until September 2009 that Smith saw pictures of the Kapalua zipline course and discovered that it included Plaintiff's tower design, braking system and employed Plaintiff's proprietary and patent-pending trolleys – without Plaintiff's authorization.   However, based upon review of public records and Cougar Mountain's due diligence at the time, Smith believed that the Kapalua Defendants were closing the Kapalua Adventures zipline course.

61.    In or around September 2009, Smith, on behalf of Skyline Eco-Adventures, another company operated by Smith and to which the '066 Patent had been assigned, discovered, through the internet, that the Piiholo Ranch Defendants had a zipline course.

62.    Defendants Domeck and ERi were mentioned in the website material discussing the Piiholo Ranch zipline course.   Upon this discovery, Skyline Eco-Adventures contacted Baldwin, CEO of Piiholo Ranch, and Owner and Operations Manager for Piiholo Ziplines.   None of Smith's telephone calls were returned by Baldwin.

63.    Upon information and belief, prior to mid-December, 2009, the Kapalua Defendants operated the zipline course at Kapalua Adventures.

64.   Upon information and belief, in or around December 2009, MLPC entered into an arrangement with Defendants Domeck, ERi and GoZip to transfer the zipline operations at Kapalua Adventures to ERi and GoZip.   Upon further information and belief, MLPC received lease and license income from Defendants Domeck, ERi and/or GoZip for operating the Kapalua zipline course.

65.   In or around March 2010, Skyline Eco-Adventures contacted Baldwin, CEO of Piiholo Ranch and informed him that Piiholo Ranch Defendants were infringing Skyline Eco-Adventures' intellectual property, including the pending patent application for its proprietary zipline trolley.

66.   Notwithstanding notice of the ;066 Patent, the Piiholo Ranch Defendants chose to continue and continues to use, maintain, sell and offer for sale, zipline course goods and services, including zipline tours and zipline rides, all of which include use of zipline trolleys which embody the inventions of and infringe one or more claims of the '066 Patent.

67.   Upon information and belief, the trolleys on the Piiholo Ranch zipline course were and are manufactured, distributed, used, sold and offered for sale by Defendants Domeck and ERi.

68.   In or around April 2010, Skyline Eco-Adventures contacted Kapalua Defendants and was informed that Selby (and Plaintiff's other contacts with the Kapalua Defendants) were no longer employed by the Kapalua Defendants.

[20]

Skyline Eco-Adventures spoke with the new CEO, Ryan Churchill ("***Churchill***")
and informed him of the fallen joint venture to develop the zipline course.
Churchill stated that he was not made aware of the potential deal and was surprised
that it was not brought to his attention when the Kapalua Defendants were
searching for a new operations company for the Kapalua Adventures zipline course
a few months prior.

69.     Churchill informed Skyline Eco-Adventures that Kapalua Adventures
ziplines had undergone operations management changes in January 2010, at which
time the Kapalua Defendants had retained Defendants Domeck and ERi.

70.     In or around October 2010, Skyline Eco-Adventures telephoned the
Kapalua Defendants and informed them that the '066 Patent was issuing and that
the Kapalua Defendants had infringed one or more claims of the '066 Patent by
their use, sale and offers for sale of zipline tours and course rides on the Kapalua
Adventure zipline course.

71.     Notwithstanding notice of the '066 Patent, the Kapalua Defendants
chose to continue and continue to use, sell and offer for sale zipline tours and
zipline rides that infringe the '066 Patent.

72.     Upon information and belief, the trolleys on the Kapalua Adventures
zipline course were and are manufactured, distributed, used, sold and offered for
sale by Defendants Domeck, and ERi.

73.     Upon information and belief, since January 2010, Defendants Domeck and ERi have operated and continue to operate and maintain the Kapalua Adventure zipline course, including the infringing trolleys.

74.     Upon information and belief, Defendants Domeck, ERi and GoZip are currently building, developing, operating and/or maintaining zipline courses on the Gold Coast in Australia, and Seoul, Korea, using Plaintiff's patented and confidential information and proprietary technology.

75.     Upon information and belief, Defendant Domeck presented Plaintiff's confidential information and proprietary technology, including the patented trolley at the Association for Challenge Course Technology's Annual International Challenge Course Symposium and Conference held in Minneapolis, Minnesota between February 3-6, 2010.   At the Conference, Domeck claimed that the information, technology and trolleys were his own technology.

76.     In the District of Hawaii, and throughout the United States, Defendants Domeck, ERi, and GoZip have manufactured, used, distributed, sold and/or offered for sale zipline tours, zipline rides, zipline courses, zipline course operations services and products, zipline course maintenance services and products, and zipline trolley products and services, all of which include zipline trolleys which embody the inventions of and are covered by one or more claims of the '066 Patent.

77.     Defendants Domeck, ERi, and GoZip's manufacture, use, sale, and/or offer for sale of the infringing products and services within the District of Hawaii and the United States is malicious and willful and done with knowledge that the zipline course and zipline trolley products and services would infringe one or more claims of the '066 Patent.

78.     In the District of Hawaii and throughout the United States, the Kapalua Defendants have used, sold and/or offered for sale zipline tours or zipline rides (or both), which include use of zipline trolleys which embody the inventions of and are covered by one or more claims of the '066 Patent.  In the District of Hawaii, the Kapalua Defendants have owned, operated and/or maintained a zipline course that embodies the inventions of and is covered by one or more claims of the '066 Patent.

79.     The Kapalua Defendants' use, sale, and/or offer for sale of the of the infringing products and services within the District of Hawaii and the United States is malicious and willful and done with knowledge that the zipline course and zipline trolley products and services would infringe one or more claims of the '066 Patent.

80.     In the District of Hawaii and throughout the United States, the Piiholo Ranch Defendants have used, sold and/or offered for sale zipline tours or zipline rides (or both), which include use of zipline trolleys which embody the inventions

[23]

of and are covered by one or more claims of the '066 Patent.  In the District of Hawaii, the Piiholo Ranch Defendants have owned, operated and/or maintained a zipline course that embodies the inventions of and is covered by one or more claims of the '066 Patent.

81.    The Piiholo Ranch Defendants' use, sale, and/or offer for sale of the of the infringing products and services within the District of Hawaii and the United States is malicious and willful and done with knowledge that the zipline course and zipline trolley products and services would infringe one or more claims of the '066 Patent.

## CLAIMS FOR RELIEF

## CLAIM I: PATENT INFRINGEMENT
### (Against All Defendants)

82.    The preceding factual statements and allegations are incorporated herein by reference.

83.    Plaintiff owns all right, title and interest to the '066 Patent, including the right to past damages for infringement based upon events occurring prior to its ownership of the '066 Patent.

84.    Defendants have infringed, induced the infringement of or contributorily infringed, and continue to infringe, induce the infringement of or contributorily infringe the '066 Patent by, among other acts, making, using, selling, or offering for sale in the District of Hawaii and throughout the United States,

zipline products and services including zipline tours and/or zipline course rides, which include use of zipline trolleys embodying the patented inventions and covered by one or more claims of the '066 Patent.

85.    Upon information and belief, each of the Kapalua Defendants, Piiholo Ranch Defendants, Domeck, ERi, and GoZip's acts of infringement has been malicious, willful, and deliberate, having been done with full knowledge of the '066 Patent and that its zipline products and services infringe the '066 Patent.

86.    Plaintiff has been damaged by Defendants' infringing acts, and is entitled to recover damages from Defendants for the infringement of the '066 Patent, in amount not less than lost profits or a reasonable royalty for the use made by Defendants of the patented inventions, plus attorneys' fees pursuant to 35 U.S.C. §285, as applicable, interest and costs.

87.    By reason of the foregoing conduct of Defendants, Plaintiff will suffer irreparable harm and damage, which damage will be difficult to ascertain, leaving Plaintiff with no adequate remedy at law, and thereby entitling  it to injunctive relief enjoining Defendants from further infringing the '066 Patent.

## CLAIM II: BREACH OF CONTRACT
### (Against Defendants Domeck and ERi)

88.    The preceding factual statements and allegations are incorporated herein by reference.

[25]

89.     The Confidentiality Agreement entered into by Cougar Mountain and Defendants Domeck and ERi is a viable and enforceable contract.    By this agreement, ERi agreed to hold in confidence information provided by Cougar Mountain for the purpose of entering into business with Cougar Mountain, and not use such information for any other purpose, or disclose any such information to any third party.

90.     With the protection of the Confidentiality Agreement, Cougar Mountain disclosed to Defendants Domeck and ERi confidential and proprietary information concerning zipline course and component design, fabrication, manufacture, assembly, installation, operation and maintenance, including proprietary zipline course and component designs, drawings, photographs, specifications, engineering drawings, and manufacturing specifications and tolerances, plans and know-how for designing, manufacturing, fabricating, constructing, assembling, installing, operating and maintaining zipline courses, zipline towers, trolleys, anchor systems, braking systems, electromagnet braking systems, wheels, dies, casts, axels, wheel housings, among other course components, and how to assemble course and system components.

91.     Cougar Mountain disclosed confidential business contacts and leads and other confidential business information, including confidential project proposals, pricing, sales, marketing, forecasts, financial models, business

development plans and other confidential financial and business model information.

92.   With the protection of the Confidentiality Agreement, Cougar Mountain introduced Defendants Domeck and ERi to the Kapalua Defendants, its existing business contacts and prospective contacts for new business.   Cougar Mountain took Defendants Domeck and ERi on-site to see the Kapalua property, and planned to involve Domeck and ERi as an installing subcontractor for the Kapalua project zipline course.   With the projection of the Confidentiality Agreement, Cougar Mountain disclosed to Defendants Domeck and ERi confidential information including the full service drawings for the Kapalua course, proprietary information for manufacturing, mapping and rigging the Kapalua course.

93.   With the protection of the Confidentiality Agreement, Cougar Mountain introduced Defendants Domeck and ERi to the Piiholo Defendants. Cougar Mountain took Defendants Domeck and ERi on-site to see the Piiholo Ranch property, and planned to involve Domeck and ERi as an installation subcontractor for the Piiholo Ranch project.   With the projection of the Confidentiality Agreement, Cougar Mountain disclosed to Domeck and ERi confidential information including the full service drawings for the Piiholo Ranch

course, proprietary information for manufacturing, mapping and rigging the Piiholo Ranch course.

94.     Defendants Domeck and ERi have breached and continue to breach the Confidentiality Agreement by, among other acts, failing to hold in confidence and disclosing to third parties confidential and proprietary information provided to Domeck and ERi by Cougar Mountain, failing to use Plaintiff's confidential information solely for the purpose of entering into business with Cougar Mountain, but instead using such information for self-serving purposes to thwart Plaintiff's business relationships and dealings with the Kapalua Defendants, Piiholo Ranch Defendants and others, and to take such business for themselves, all to the financial benefit of Defendants and the financial detriment of Plaintiff.  Defendants continue to use Plaintiff's confidential and proprietary information without Plaintiff's authorization to operate and maintain the course.

95.     As result of Defendants' breach of the Confidentiality Agreement, Plaintiff has been damaged, and is entitled to recover damages from Defendants in an amount to compensate Plaintiff for the breach, in amount not less than actual damages to be proven at trial.

96.     By reason of the foregoing conduct of Defendants, Plaintiff will suffer irreparable harm and damage, which damage will be difficult to ascertain, leaving Plaintiff with no adequate remedy at law, and thereby entitling Plaintiff to

injunctive relief enjoining Defendants from further breaches of the Confidentiality Agreement.

## CLAIM III: TRADE SECRET MISAPPROPRIATION
### (Against Defendants Domeck, ERi, GoZip, the Kapalua Defendants, and the Piiholo Ranch Defendants)

97.    The preceding factual statements and allegations are incorporated herein by reference.

98.    Plaintiff's confidential and proprietary information concerning zipline course and component design, fabrication, manufacture, assembly, installation, operation and maintenance, including proprietary zipline course and component designs, drawings, photographs, specifications, engineering drawings, and manufacturing specifications and tolerances, plans and know-how for designing, manufacturing, fabricating, constructing, assembling, installing, operating and maintaining zipline courses, zipline towers, trolleys, anchor systems, braking systems, electromagnet braking systems, wheels, dies, casts, axels, wheel housings, among other course components, and how to assemble course and system components, constitute trade secrets within the meaning of the Hawaii Uniform Trade Secrets Act §482B-2 (2008).

99.    Plaintiff's confidential business contacts and other confidential business information, including confidential project proposals, pricing, sales, marketing, forecasts, financial models, business development plans and other

confidential financial and business model information, constitute trade secrets within the meaning of the Hawaii Uniform Trade Secrets Act §482B-2 (2008).

100.   Plaintiff made efforts that are reasonable under the circumstances to maintain the secrecy of its trade secrets under the Hawaii Uniform Trade Secrets Act §482B-2 (2008).   Plaintiff derives independent economic value, actual or potential, from its trade secrets not being generally known to the public or to other persons who could obtain economic value from their disclosure or use, as prescribed by the Hawaii Uniform Trade Secrets Act §482B-2 (2008).

101.   With the protection of the Confidentiality Agreement, Cougar Mountain introduced Defendants Domeck and ERi to the Kapalua Defendants. Cougar Mountain took Defendants Domeck and ERi on-site to see the Kapalua property, and planned to involve Domeck and ERi as an installation subcontractor for the Kapalua project.   With the projection of the Confidentiality Agreement, Cougar Mountain disclosed to Defendants Domeck and ERi confidential information including the full service drawings for the Kapalua course, proprietary information for manufacturing, mapping and rigging the Kapalua course.

102.   With the protection of the Confidentiality Agreement, Cougar Mountain introduced Defendants Domeck and ERi to the Piiholo Defendants. Cougar Mountain took Defendants Domeck and ERi on-site to see the Piiholo Ranch property, and planned to involve Domeck and ERi as a subcontractor for the

Piiholo Ranch project for installing the zipline course.  With the protection of the Confidentiality Agreement, Cougar Mountain disclosed to Domeck and ERi confidential information including the full service drawings for the Piiholo Ranch course, proprietary information for manufacturing, mapping and rigging the Piiholo Ranch course.

103.   Cougar Mountain presented a zipline course development agreement, "Skyline Development Proposal" to the Kapalua Defendants, including a live presentation at its Board of Directors meeting, which included discussion and provisions that the development and construction of the course design would use Plaintiff's intellectual property including trade secret information, for which Plaintiff required a royalty payment.

104.   Although Cougar Mountain and the Kapalua Defendants did not finalize the development agreement, the Kapalua Defendants knew that the intellectual property which comprised part of the Kapalua zipline course design provided by Cougar Mountain was owned by Plaintiff.  Nonetheless, the Kapalua Defendants decided to build the zipline course with Defendants Domeck and ERi, circumventing Cougar Mountain's participation in the venture, knowing that the course includes Plaintiff's technology without Plaintiff's authorization.

105.   Cougar Mountain presented a zipline course Skyline Development Proposal to Defendant Piiholo Ranch, which included discussion and provisions

that the development and construction of the course design would use Plaintiff's intellectual property including trade secret information, for which Plaintiff required a royalty payment.

106.   Although Plaintiff and Piiholo Ranch did not finalize the development agreement, Piiholo Ranch knew that the intellectual property which comprised part of the Piiholo Ranch zipline course design provided by Cougar Mountain was owned by Plaintiff.   Nonetheless, the Piiholo Ranch Defendants decided to build the zipline course with Defendants Domeck and ERi, circumventing Cougar Mountain's participation in the venture, knowing that the course includes Plaintiff's technology without Plaintiff's authorization.

107.   Defendants Domeck and ERi misappropriated (and continue to misappropriate and wrongfully abstract, use and/or disseminate) Plaintiff's trade secrets, within the meaning of the Hawaii Uniform Trade Secrets Act §482B-2 (2008) by, *inter alia*, (i) acquiring Plaintiff's trade secrets by improper means including breach or inducement of a breach of a duty to maintain secrecy; (ii) disclosing or using Plaintiff's trade secrets without Plaintiff's express or implied consent; (iii) acquiring Plaintiff's trade secret information through improper means while knowing or having reason to know that the person's knowledge of the trade secret information was derived from or through a person who had utilized improper means to acquire it; and (iv) acquiring Plaintiff's trade secret information

under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to Plaintiff to maintain its secrecy or limit its use, and by failing to hold in confidence the trade secret information provided to Defendants Domeck and ERi by Cougar Mountain under the protection of the Confidentiality Agreement.

108.   , Defendants ERi and Domeck's prior and ongoing wrongful actions constitute the misappropriation of trade secrets in violation of the Hawaii Uniform Trade Secrets Act §482B-2 (2008).

109. GoZip misappropriated (and continues to misappropriate and wrongfully abstract, use and/or disseminate) Plaintiffs' trade secrets, within the meaning of the Hawaii Uniform Trade Secrets Act §482B-2 (2008) by, *inter alia*, (i) acquiring Plaintiff's trade secrets by improper means including breach or inducement of a breach of a duty to maintain secrecy; (ii) disclosing or using Plaintiff's trade secrets without Plaintiff's express or implied consent; (iii) acquiring Plaintiff's trade secret information through improper means while knowing or having reason to know that the person's knowledge of the trade secret information was derived from or through a person who had utilized improper means to acquire it; and (iv) acquiring Plaintiff's trade secret information under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to Plaintiff to maintain its

secrecy or limit its use, and by using Plaintiff's trade secret information for the Kapalua course operation and maintenance projects.

110.  Defendant  GoZip  knew  that  the  confidential  information  and proprietary technology used in the Kapalua zipline course was obtained by Defendants Domeck and ERi under the protection of and subject to the Confidentiality Agreement with Cougar Mountain.  Nonetheless, GoZip used and continues to use, without authorization, Plaintiff's trade secrets in building, developing, using, operating and maintaining the Kapalua zipline course.  GoZip's prior and ongoing wrongful actions constitute the misappropriation of trade secrets in violation of the Hawaii Uniform Trade Secrets Act §482B-2 (2008).

111.  The  Kapalua  Defendants  misappropriated  (and  continue  to misappropriate and wrongfully abstract, use and/or disseminate) Plaintiffs' trade secrets, within the meaning of the Hawaii Uniform Trade Secrets Act §482B-2 (2008) by, *inter alia*, (i) acquiring Plaintiff's trade secrets by improper means including breach or inducement of a breach of a duty to maintain secrecy; (ii) disclosing or using Plaintiff's trade secrets without Plaintiff's express or implied consent; (iii) acquiring Plaintiff's trade secret information through improper means while knowing or having reason to know that the person's knowledge of the trade secret information was derived from or through a person who had utilized improper means to acquire it; and (iv) acquiring Plaintiff's trade secret information

under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to Plaintiff to maintain its secrecy or limit its use, and by engaging Defendants ERi, Domeck and GoZip for the Kapalua zipline course development, construction, operation and maintenance projects.

112.  The Kapalua Defendants terminated the original joint venture with Plaintiffs and continued to engage the services of Defendants Domeck and ERi despite knowing that ERi and Domeck were presented to the Kapalua Defendants as subcontractors by Plaintiff and were subject to the Confidentiality Agreement.

113.  The Kapalua Defendants also knew that the zipline course design and development plan presented by Cougar Mountain included Plaintiff's intellectual property including trade secret information, for which the Kapalua Defendants declined to take license to in terminating the development agreement, yet which the Kapalua Defendants used without Plaintiff's authorization in building, developing, using, operating and maintaining the Kapalua zipline course.  The Kapalua Defendants' prior and ongoing wrongful actions constitute the misappropriation of trade secrets in violation of the Hawaii Uniform Trade Secrets Act §482B-2 (2008).

114.  The Piiholo Ranch Defendants have misappropriated (and continue to misappropriate and wrongfully abstract, use and/or disseminate) Plaintiffs' trade

secrets, within the meaning of the Hawaii Uniform Trade Secrets Act §482B-2 (2008) by (i) acquiring Plaintiff's trade secrets by improper means including breach or inducement of a breach of a duty to maintain secrecy; (ii) disclosing or using Plaintiff's trade secrets without Plaintiff's express or implied consent; (iii) acquiring Plaintiff's trade secret information through improper means while knowing or having reason to know that the person's knowledge of the trade secret information was derived from or through a person who had utilized improper means to acquire it; and (iv) acquiring Plaintiff's trade secret information under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to Plaintiff to maintain its secrecy or limit its use, and by engaging Defendants ERi, and Domeck for the Piiholo Ranch zipline course development, construction, operation and maintenance projects.

115.   The Piiholo Defendants circumvented Cougar Mountain's participation in the development and construction of the Piiholo Ranch zipline course and engaged the services of Defendants Domeck and ERi despite knowing that ERi and Domeck were presented to the Piiholo Ranch Defendants as subcontractors by Plaintiff and were subject to the Confidentiality Agreement.

116.   The Piiholo Defendants also knew that the zipline course design and development plan originally presented by Cougar Mountain contained Plaintiff's

intellectual property including trade secret information (for which the Piiholo Defendants declined to take license in when it prematurely ceased its relationship with Cougar Mountain) yet which the Piiholo Ranch Defendants utilized without Plaintiff's authorization in building, developing, using, operating and maintaining the Piiholog Ranch zipline course. The Piiholo Ranch Defendants' prior and ongoing wrongful actions constitute the misappropriation of trade secrets in violation of the Hawaii Uniform Trade Secrets Act §482B-2 (2008).

117. Defendants' misappropriation has resulted in detriment to Plaintiff and will continue to do so unless and until enjoined by this Court. By reason of the foregoing conduct of the above-named Defendants, Plaintiff will suffer irreparable harm and damage, which damage will be difficult to ascertain, leaving Plaintiff with no adequate remedy at law, and thereby entitling Plaintiff to injunctive relief enjoining Defendants from further misappropriation of its trade secrets, per the Hawaii Uniform Trade Secrets Act §482B-3 (2008).

118. As result of Defendants misappropriation of Plaintiff's trade secrets, Plaintiff has been damaged, and is entitled to recover damages from Defendants in an amount necessary to compensate Plaintiff for the breach, not less than the actual loss caused by misappropriation.

119. Defendants' misappropriation has been (and continues to be) willful and malicious. As such, Plaintiff is entitled to recover exemplary damages in an

amount not exceeding twice any actual damages award, and attorneys' fees and costs, per the Hawaii Uniform Trade Secrets Act §§482B-4and 5 (2008).

## CLAIM IV: FRAUD/FRAUDULENT CONCEALMENT
### (Against Defendants Domeck and ERi,
### the Kapalua Defendants, and the Piiholo Ranch Defendants)

120.   The preceding factual statements and allegations are incorporated herein by reference.

121.   Defendants Domeck and ERi falsely represented to Skyline Eco-Adventures that they were not working on the Kapalua zipline course project, in an attempt to conceal Defendants' unauthorized uses of Plaintiff's confidential and proprietary information and technology, and the fact that they were indeed entering into business relations with the Kapalua Defendants to develop and maintain the Kapalua ziplines course thereby purposefully circumventing Cougar Mountain from participating in the project.

122.   At the time of making such representations, Defendants Domeck and ERi knew that the statements were false and contemplated that Plaintiff would rely upon the false statement, drop the inquiry, and fail to enforce it rights based upon Defendant's unauthorized uses of Plaintiff's confidential and proprietary information and technology.

123.   Skyline Eco-Adventures relied upon Defendants' false representation, and believed that the Kapalua Defendants were building a zipline course that did

not include unauthorized use of its confidential and proprietary information and technology. Based upon Defendants' false statements, Skyline Eco-Adventures did not pursue any claims against Domeck or ERi related to the Kapalua zipline course at that time.

124. However, in September 2009, Skyline Eco-Adventures inadvertently discovered that the Kapalua course incorporates Plaintiff's confidential and proprietary zipline information and technology via seeing pictures of the completed course. At this time, Skyline Eco-Adventures learned of Defendants ERi and Domeck's deception and that they were involved in the development and building of the Kapalua zipline course, contrary to their representation to CMA that they had no involvement in this course. Discovery of this deception caused Skyline Eco-Adventures to also investigate the Piiholo Ranch zipline course and discover that the Piiholo Ranch course also incorporates Plaintiff's confidential and proprietary zipline information and technology, and that Defendants ERi and Domeck were involved in the development and building of the Piiholo Ranch zipline course. Plaintiff was not able to discover this false representation through the exercise of reasonable due diligence until after the Kapalua course was open to the public and Skyline Eco-Adventures was able to learn of it through third parties.

125.   Defendants continue to use Plaintiff's confidential and proprietary information and technology without Plaintiff's authorization to operate and maintain the Kapalua course, among others.

## CLAIM V: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
### (Against Defendants Domeck and ERi)

126.   The preceding factual statements and allegations are incorporated herein by reference.

127.   Cougar Mountain's business relationship with the Kapalua Defendants, including its design of the Kapalua zipline course, negotiations for and Letter of Intent regarding a joint venture for developing the Kapalua ziplines course, was a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific and capable of acceptance in the sense that there was a reasonable probability of it manifesting into a future economic benefit to Plaintiff, within the meaning of Hawaii common law.

128.   Defendants Domeck and ERi had actual knowledge that this prospective business interest existed with the Kapalua Defendants.

129.   Defendants Domeck and ERi intentionally interfered with Plaintiff's relationship, advantage and expectancy with the Kapalua Defendants, seeking to take the Kapalua ziplines course business for the exclusive benefit of Domeck and ERi.

130. Defendants Domeck and ERi's interference with Plaintiff's relationship, advantage and expectancy with the Kapalua Defendants caused an impairment to that relationship, advantage and expectancy, by causing the Kapalua Defendants to cease to do business with Plaintiff and discontinue all discussions and negotiations regarding developing the Kapalua ziplines course.

131. Defendants Domeck and ERi's interference caused injury to Plaintiff, including actual damage to Plaintiff in an amount to be determined at trial, from lost profits, revenues and royalties to which it was entitled and would have received for developing, operating and maintaining the Kapalua zipline course but for Defendants' willful interference.

132. Cougar Mountain's business relationship with the Piiholo Ranch Defendants, including its design of the Piiholo Ranch zipline course, discussions regarding a development agreement or joint venture for developing the Piiholo Ranch ziplines course, was a valid business relationship and prospective advantage sufficiently definite, specific and capable of acceptance in the sense that there was a reasonable probability of it maturing into a future economic benefit to Plaintiff, within the meaning of Hawaii common law.

133. Defendants Domeck and ERi had actual knowledge that this prospective business interest existed with the Piiholo Ranch Defendants.

134.   Defendants Domeck and ERi intentionally interfered with Plaintiff's relationship, advantage and expectancy with the Piiholo Ranch Defendants, seeking to take the Piiholo Ranch ziplines course business for the exclusive benefit of Domeck and ERi.

135.   Defendants Domeck and ERi's interference with Plaintiff's relationship, advantage and expectancy with the Piiholo Ranch Defendants caused impairment to that relationship, advantage and expectancy, by causing the Piiholo Ranch Defendants to cease doing business with Plaintiff and to discontinue all discussions and negotiations regarding developing the Piiholo Ranch ziplines course.

136.   Defendants Domeck and ERi's interference caused injury to Plaintiff, including actual damage to Plaintiff in an amount to be determined at trial, from lost profits, revenues and royalties to which it was entitled and would have received for developing, operating and maintaining the Piiholo Ranch zipline course but for Defendants' willful interference.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff demands judgment in its favor and against Defendants requiring Defendants to answer and appear and, at trial or final hearing, that Plaintiff recovers from and against Defendants the following relief:

A.     An order or judgment that Defendants have infringed one or more claims of the '066 Patent, both directly and either contributorily or by inducement;

B.     An award and/or order for an accounting of damages for patent infringement;

C.     Actual damages to compensate Plaintiff for the patent infringement, not less than a reasonable royalty for the use made of the inventions of the '066 Patent, together with interest and costs as fixed by the court per 35 U.S.C. §284, the amounts of which shall be proven at trial;

D.     An award and/or order finding this case to be exceptional;

E.     Attorneys' fees and expenses, as permitted by 35 U.S.C. §285;

F.     Statutorily increased damages, in an amount not less than treble the actual damages pursuant to 35 U.S.C. § 284;

G.     An order that Defendants deliver to Plaintiff, for destruction at Plaintiff's option, all products that infringe the '066 Patent;

H.     An order permanently enjoining Defendants, their agents, officers, Board of Directors, assigns and others acting in concert with Defendants from infringing, inducing infringement of or contributorily infringing the '066 Patent;

I.     An award and/or order for damages to compensate Plaintiffs for Defendants Domeck and ERi's breach of the Confidentiality Agreement, in an amount not less than actual damages to be proven at trial;

[43]

J.      An order permanently enjoining Defendants Domeck and ERi, their agents, officers, Board of Directors, assigns and others acting in concert with Defendants from further breaches of the Confidentiality Agreement.

K.      An adjudication that Defendants Domeck and ERi fraudulently concealed their actions to misuse Plaintiff's confidential and proprietary information and technology;

L.      An award and/or order for damages to compensate Plaintiff for Defendants' misappropriation of Plaintiff's trade secrets, in amount not less than the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss, not less than a reasonable royalty for Defendants' unauthorized disclosure and use of the trade secrets, per the Hawaii Uniform Trade Secrets Act §482B-4 (2008);

M.      An adjudication that Defendants' misappropriation has been (and continues to be) willful and malicious;

N.      An award and/or order for exemplary damages in an amount not exceeding twice any actual damages award, and attorneys' fees and costs, per the Hawaii Uniform Trade Secrets Act §§482B-4and 5 (2008);

O.      An order permanently enjoining Defendants Domeck and ERi, their agents, officers, Board of Directors, assigns and others acting in concert with Defendants from further misappropriations of Plaintiff's trade secrets;

P.    An award and/or order for damages to compensate Plaintiffs for Defendants Domeck and ERi's interference with prospective business relationship or advantage, in an amount not less than actual damages to be proven at trial;

Q.    Costs of court, as permitted by law;

R.    Attorneys' fees and expenses, as permitted by law; and

S.    All other relief to which Plaintiff is entitled.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issue triable by law to a jury.

DATED: Wailuku, Hawaii, August 3, 2012.

IVEY FOSBIDER FOSBINDER LLLC
A Limited Liability Law Company


__/s/ James H. Fosbinder / _____
JAMES H. FOSBINDER
Attorney for Plaintiff