IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SKYLINE ZIPLINE GLOBAL, LLC, | ) | CIVIL NO. 12-00450 JMS-BMK |
| | ) | |
| Plaintiff, | ) | ORDER (1) GRANTING |
| | ) | DEFENDANTS/ |
| vs. | ) | COUNTERCLAIMANTS TODD |
| | ) | DOMECK, EXPERIENTIAL |
| TODD DOMECK; EXPERIENTIAL | ) | RESOURCES, INC., AND GO ZIP, |
| RESOURCES, INC.; GO ZIP, LLC; | ) | LLC'S MOTION FOR SUMMARY |
| MAUI LAND AND PINEAPPLE | ) | JUDGMENT AS TO COUNT I |
| COMPANY, INC.; KAPALUA LAND | ) | (PATENT INFRINGEMENT) OF |
| COMPANY, LTD.; BALDWIN | ) | THE COMPLAINT FILED ON |
| BROTHERS LLC dba PIIHOLO | ) | AUGUST 8, 2012, DOC. NO. 47; |
| RANCH ZIPLINE; JOHN DOES 1-10; | ) | AND (2) GRANTING DEFENDANT |
| JANE DOES 1-10; DOE | ) | MAUI LAND AND PINEAPPLE |
| CORPORATIONS 1-10; and DOE | ) | COMPANY, INC.'S AND |
| PARTNERSHIPS 1-10, | ) | KAPALUA LAND COMPANY, |
| | ) | LTD.'S MOTION FOR SUMMARY |
| Defendants. | ) | JUDGMENT AS TO COUNT I OF |
| _____ | ) | THE COMPLAINT, DOC. NO. 56 |

## ORDER (1) GRANTING DEFENDANTS/COUNTERCLAIMANTS TODD DOMECK, EXPERIENTIAL RESOURCES, INC., AND GO ZIP, LLC'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT I (PATENT INFRINGEMENT) OF THE COMPLAINT FILED ON AUGUST 8, 2012, DOC. NO. 47; AND (2) GRANTING DEFENDANT MAUI LAND AND PINEAPPLE COMPANY, INC.'S AND KAPALUA LAND COMPANY, LTD.'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT I OF THE COMPLAINT, DOC. NO. 56

## I.  INTRODUCTION

This dispute stems from Cougar Mountain Adventures, Ltd.'s

("Cougar Mountain") efforts to enter into agreements to develop, install, and/or

operate zipline adventure courses for Defendants Maui Land and Pineapple

Company, Inc. ("MLPC") and Kapalua Land Company, Ltd. (collectively,

"Kapalua Defendants"), as well as for Baldwin Brothers, LLC dba Piiholo Ranch

Zipline ("Baldwin Brothers").[1]  As alleged in the August 8, 2012 Complaint,

Cougar Mountain disclosed its intellectual property to its proposed subcontractor,

Experimental Resources, Inc. ("ERI"), and ERI's owner Todd Domeck

("Domeck"), who then used this information in developing and operating zipline

operations for Kapalua Defendants and Baldwin Brothers without Cougar

Mountain's involvement or knowledge.  Cougar Mountain has since assigned the

rights to its intellectual property, including its rights to U.S. Patent No. 7,819,066

("the '066 Patent"), to Plaintiff Skyline Zipline Global, LLC ("Skyline"), which

brought this action.

In Count I of the Complaint, Skyline asserts a claim against all

Defendants for infringement of the '066 Patent, based on their making, using,

selling, and/or offering for sale ERI's zipline trolleys.  Currently before the court is

(1) Kapalua Defendants' and (2) ERI, Domeck, and Go Zip's (collectively, "ERI

---

[1]  The Complaint incorrectly identifies Baldwin Brothers as Piiholo Land, LLC and
Piiholo Classic, LLC.  The parties have since stipulated and substituted these Defendants for the
proper party.  Doc. No. 34.  Baldwin Brothers joins in ERI Defendants' Motion for Summary
Judgment.  Doc. No. 50.

Defendants") Motions for Summary Judgment as to the patent infringement claim.[2]

Defendants argue that there is no genuine issue of material fact that the ERI

trolleys infringe the '066 Patent because they do not include a "first spreader" or a

"second spreader" as required by each claim in the '066 Patent.  Based on the

following, the court GRANTS the Motions for Summary Judgment.

## II.  BACKGROUND

### A.    Factual Background

#### 1.    The '066 Patent

The '066 Patent, titled "Zipline Trolley," was filed with the U.S.

Patent and Trademark Office ("PTO") on September 29, 2008, published on

September 10, 2009, and issued on October 26, 2010.  *See* Doc. No. 47-27, ERI

Defs.' Ex. B, '066 Patent.  The named inventor on the '066 Patent is Kevin

Geoffrey Smith, and Skyline asserts that Smith and his related companies (Cougar

Mountain, Skyline Eco-Adventures, Ltd. and Skyline Zipline USA, LLC) assigned

their rights in the '066 Patent to Skyline.

As explained in the '066 Patent, a zipline trolley is a device that "rolls

along a suspended length of cable" and can attach to a rider.  *See id.* at col. 1, lines

---

[2]  Kapalua Defendants have also filed a Motion to Dismiss the Counts of the Complaint
against them, which Baldwin Brothers has substantively joined in part.  The court will address
the Motion to Dismiss after Skyline responds to the court's "Order Requiring Plaintiff Skyline
Global, LLC to File a Jurisdictional Statement."

18-25.  The '066 Patent discloses that a zipline trolley typically includes (1) a cylindrical frame enclosing two wheels that roll along the top of the cable; (2) a handlebar that is suspended from the bottom of the cylindrical frame by four lines, and to which slings may attach to connect the trolley to the user; and (3) a braking mechanism.  *Id.* at col. 1, lines 19-28.  The '066 Patent describes that the conventional zipline trolley "is bulky and heavy, making it difficult to transport it from one end of the cable to the other.  The design of the trolley also makes it difficult to remove and replace the wheels, lines, and slings, which is periodically necessary to allow for replacement due to wear and tear."  *Id.* at col. 1, lines 29-34.  As described in the specification, the invention of the '066 Patent "comprises a trolley that is lighter and more compact than the conventional trolley.  This trolley also allows for the easier removal and replacement of the wheels, lines, and slings."  *Id.* at col. 2, lines 25-28.

The '066 Patent recites one independent claim, and fourteen dependent claims.[3]  At issue for purposes of the present Motions is the meaning of the term "spreader," as used in Claim 1, the only independent claim.  The court

---

[3]  Patent claims come in two general forms: independent claims and dependent claims.  *See* 35 U.S.C. § 112.  Independent claims contain all the claim limitations in the individual claim and, as the name implies, stand on their own with respect to the identification of the claim limitations.  In comparison, dependent claims incorporate by reference all the claim limitations of a referenced independent claim, and include additional claim limitations.  *Id.*

recites and discusses the claim language in its claim construction analysis.

### 2.    *ERI's Trolleys*

Skyline asserts that ERI's trolleys, some of which are used in Kapalua Defendants' and Baldwin Brothers' zipline courses, infringe various claims of the '066 Patent.  According to Todd Domeck, the chief executive officer of ERI and managing member of Go Zip, ERI Defendants have made, used, sold, and/or offered for sale seven different models of zipline trolleys.  Doc. No. 47-2, Domeck Decl. ¶ 4.  ERI designed four of these models, and the other three models were designed and manufactured by third parties and then offered for sale and sold by ERI Defendants.  *Id.*

ERI trolley model 1, as depicted in ERI Exhibits 1-5, Doc. Nos. 47-3 - 47-7, was designed and manufactured by ERI and was sold for use in Kapalua Defendants' zipline course, as well as another zipline on Oahu.  Doc. No. 47-2, Domeck Decl. ¶¶ 5-6.  Go Zip uses and operates both these zipline courses.  *Id.* ¶¶ 7-8.

ERI trolley model 2, as depicted in ERI Exhibits 6-10, Doc. Nos. 47-8 - 47-12, was designed and manufactured by ERI and sold for use in Baldwin Brothers' zipline course.  Doc. No. 47-2, Domeck Decl. ¶¶ 17-18.

ERI trolley model 3, as depicted in ERI Exhibits 11-13,  Doc. Nos.

47-13 - 47-15, was designed and manufactured by ERI, and was sold in 2009 for use in the Flying Hawaiian Zipline course in Maui.  Doc. No. 47-2, Domeck Decl. ¶¶ 28-29.

ERI trolley model 4, as depicted in ERI Exhibits 14-18,  Doc. Nos. 47-16 - 47-20, was designed by ERI, manufactured by Indianapolis Fabrications, and sold by ERI for use in zipline courses in West Virginia, California, and Oahu. Doc. No. 47-2, Domeck Decl. ¶¶ 39-40.  Go Zip operates the zipline courses in California and Oahu.  *Id.* ¶ 41.

For each of ERI trolley models 1-4, there are two pairs of lines that run from the upper part of the device (the part of the device through which the cable runs), and attach to either side of the handlebar.  Specifically, each pair of lines attaches to a single point on either side of the handlebar.

As to ERI trolley models 5-7, as shown in ERI Exhibits 19-22, Doc. Nos. 21-24, Skyline concedes that they are not at issue because they do not include a "first spreader" or "second spreader," under any reasonable interpretation of these terms.  *See* Doc. No. 63, Pl.'s Concise Statement of Facts.

**B.     Procedural Background**

On August 8, 2012, Skyline filed its Complaint asserting claims for (1) patent infringement against all Defendants (Count I); (2) breach of contract

against Domeck and ERI (Count II); (3) trade secret misappropriation against all Defendants (Count III); (4) fraudulent concealment against all Defendants except Go Zip (Count IV); and (5) tortious interference against Domeck and ERI (Count V).[4]

On December 6, 2012, ERI Defendants filed their Motion for Partial Summary Judgment. Doc. No. 47. On December 7, 2012, Baldwin Brothers joined ERI Defendants' Motion. Doc. No. 50. On December 28, 2012, Kapalua Defendants filed their Motion for Partial Summary Judgment. Doc. No. 56. Skyline filed Oppositions on January 14, 2013, Doc. Nos. 64, 66, and Replies were filed on January 18, 2013. A hearing was held on February 4, 2013.

### III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."

---

[4]  On October 17, 2012, ERI Defendants filed a Counterclaim asserting, among other claims, a counterclaim for declaratory judgment of noninfringement. Doc. No. 12-1. At the February 4, 2013 hearing, counsel for ERI Defendants agreed that their counterclaim for noninfringement is moot if the court grants their Motion for Summary Judgment. ERI Defendants shall further notify the court via letter by February 28, 2013 whether they intend to dismiss their counterclaim for declaratory judgment of invalidity.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248).  When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille*

*Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor" (citations omitted)).

## IV.  ANALYSIS

Defendants seek summary judgment on Count I of the Complaint

asserting that ERI's zipline trolleys infringe various claims of the '066 Patent.

Defendants argue that ERI's trolleys include neither a "first spreader" nor a

"second spreader" as recited in Claim 1 of the '066 Patent, the only independent

claim, and therefore ERI's trolleys do not infringe any claims of the '066 Patent.

In determining whether an accused device infringes a patent claim, the

court must (1) determine the meaning and scope of the patent claims allegedly

infringed; and then (2) compare the properly construed claims to the infringing

device.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)

(en banc).  The first step, known as claim construction, is an issue of law for the

court to decide.  *Id.* at 979.  Although the second step of comparing the claims to

the accused device is generally determined by the finder of fact, *id.*, summary

judgment may be granted "if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused device is encompassed by the claims." *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1358 (Fed. Cir. 2009) (quoting *Combined Sys., Inc. v. Def. Tech. Corp. of Am.*, 350 F.3d 1207, 1210 (Fed. Cir. 2003)).  The court addresses each of these inquiries.

## A.    Claim Construction

### 1.    *Claim Construction Principles*

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989).  To determine the meaning of a claim term, the court must examine the intrinsic evidence, which includes the claims, the patent's specification, and its prosecution history (*i.e.*, the complete record of the proceedings before the PTO in obtaining the patent, including the prior art cited during the examination).  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  The court may also consider extrinsic evidence, *i.e.*, "all evidence external to the patent and prosecution history," *Markman*, 52 F.3d at 980, although such extrinsic evidence is "less significant than the intrinsic record in determining

the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317.

With that said, however, "[t]he sequence of steps used by the judge in consulting

various sources is not important; what matters is for the court to attach the

appropriate weight to be assigned to those sources in light of the statutes and

policies that inform patent law." *Id.* at 1324.

   *Phillips* explained the importance and weight to be given to each of

theses sources for claim construction.  The claims are "of primary importance, in

the effort to ascertain precisely what it is that is patented."  *Id.* at 1312 (quoting

*Merrill v. Yeomans*, 94 U.S. 568, 570 (1876)).  Claim terms "'are generally given

their ordinary and customary meaning,'" which is "the meaning that the term

would have to a person of ordinary skill in the art in question at the time of the

invention, *i.e.*, as of the effective filing date of the patent application."  *Id.* at 1312-

13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.

1996)).

   The claim term must be read "not only in context of the particular

claim in which the disputed term appears, but in the context of the entire patent,

including the specification."  *Id.* at 1313.  The specification "is always highly

relevant to the claim construction analysis.  Usually, it is dispositive; it is the single

best guide to the meaning of a disputed term."  *Id.* at 1315 (quoting *Vitronics*, 90

F.3d at 1582).  The specification "necessarily informs the proper construction of the claims," given that its very purpose is to "describe the invention in 'full, clear, concise, and exact terms.'"  *Id.* at 1316 (quoting 35 U.S.C. § 112).  As a result, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."  *Id.* (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)); *see also Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004) ("Even when guidance is not provided in explicit definitional format, 'the specification may define claim terms "by implication" such that the meaning may be found in or ascertained by a reading of the patent documents.'" (citations and some quotations omitted)).

The prosecution history "provides evidence of how the PTO and the inventor understood the patent."  *Phillips*, 415 F.3d at 1317.  The prosecution history is often "less useful" than the specification because the prosecution history, as an ongoing negotiation between the PTO and applicant, often lacks the clarity of the specification.  *Id.*  The prosecution history can nonetheless "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."  *Id.*

(citing *Vitronics*, 90 F.3d at 1582-83).

Although less significant and reliable than intrinsic evidence, extrinsic evidence may be useful when it is "considered in the context of the intrinsic evidence." *Id.* at 1319.  For example, technical dictionaries may assist the court "'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms." *Id.* at 1318 (quoting *Vitronics*, 90 F.3d at 1584 n.6).  General purpose dictionaries may also be helpful where "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)).  Finally, expert testimony may be helpful, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court," and the court should "discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'" *Id.* at 1318 (quoting *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998)).

### 2.    *Application*

Defendants argue that the court should construe the term "spreader" as used in Claim 1 of the '066 Patent as "a device holding two linear elements apart." In comparison, Skyline asserts that a "spreader" is "a device that, when combined with another spreader, holds each pair of lines descending from the trolley far enough apart to create an angulation between them, which helps prevent the handlebar from swinging from side to side."  Doc. No. 62, Pl.'s Opp'n at 11. Based on the following, the court finds that Defendants' construction most comports with the term's usage in the '066 Patent as would be understood by a person of ordinary skill in the art.

As a starting point, the claim term "spreader," on its own, does not appear to require any special interpretation -- any layperson would understand the basic meaning of this word.  *See Phillips*, 415 F.3d at 1314 (explaining that "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words").  Specifically, a layperson would understand that a "spreader" spreads, *i.e.*, a spreader distributes, separates, and/or disperses other items.

14

That a person of ordinary skill in the art would understand that the term "spreader" is used according to its common understanding is well-supported by the intrinsic evidence, which does not suggest any specialized meaning of the word.  The term "spreader" appears in the Claim 1 as follows:

> 1. A zipline trolley comprising:
> a substantially flat first side flange;
> a substantially flat second side flange, wherein said first
>     side flange and second side flange are arranged in
>     a parallel configuration;
> a substantially flat front face attached perpendicularly to
>     the front edges of said first and second side
>     flanges, and wherein said substantially flat front
>     face extends beyond the width between said first
>     and second side flanges;
> a substantially flat back face attached perpendicularly to
>     the rear edges of said first and second side flanges,
>     and wherein said substantially flat back face
>     extends beyond the width between said first and
>     second flanges;
> two axles for bearing wheels extending between said first
>     side flange and said second side flange;
> four lines, comprising
>     first two lines, wherein one end of each of said first
>         two lines is attached to said first side flange;
>         and
>     second two lines, wherein one end of each of said
>         second two lines is attached to said second
>         side flange;
> a first **spreader**, wherein said first **spreader** is attached
>     to the other end of each of said first two lines;
> a second **spreader**, wherein said second **spreader** is
>     attached to the other end of each of said second
>     two lines; and
> a handlebar, wherein said handlebar is rigidly attached to

said first **spreader** and said second **spreader**.

According to the claim language, two lines from the top portion of the trolley

attach to each "spreader," suggesting that each spreader spreads, or separates, the

two lines that attach to it.

The specification confirms that "spreader" is used according to its

plain meaning.  The specification describes that for each spreader, one line is

attached to the "front hole" of the spreader, and the second line is attached to the

"back hole" of the spreader:

> A lower frame 3 of the trolley comprises a first line 100,
> a second line 101, a third line 102, a fourth line 103, a
> left spreader 110, a right spreader 115, and a handlebar
> 130.  The lines 100, 101, 102, 103 hang below upper
> frame 1.  First line 100 is attached at one end to left front
> hole 90 and at the other end to a left front spreader hole
> 120 on left spreader 110.  Second line 101 is attached at
> one end to left rear hole 91 and at the other end to a left
> rear spreader hole 121 on left spreader 110.  Third line
> 102 is attached at one end to right front hole 92 and at the
> other end to a right front spreader hole 122 on right
> spreader 110.  Fourth line 103 is attached at one end to
> right rear hol[e] 93 and at the other end to a right rear
> spreader hole 123 on right spreader 110.

'066 Patent, col. 4, lines 6-18.  Thus, the specification describes that each spreader

acts to space the lines attached to it from one another, which in the embodiment

described by the specification is accomplished by attaching each line to either the

front or back of the spreader.  Specifically, left spreader 110 spreads lines 100 and

101 (the lines that attach to left spreader 110), and right spreader 115 spreads lines

102 and 103 (the lines that attach to right spreader 115). That each spreader acts to

separate the lines attached to it is further displayed in Figure 1 of the '066 Patent.

*See* Doc. No. 47-27, ERI Defs.' Ex. B, '066 Patent at Fig. 1.

Finding that the specification supports the common meaning of the

term "spreader" does not, as Skyline argues, improperly limit the claims to the

preferred embodiment of the invention shown in Figure 1 of the '066 Patent.

Specifically, Skyline asserts that the claim language and specification of the '066

Patent describe only that the lines attach to the spreaders, and nowhere do they

affirmatively state that the spreaders must hold the lines attached to the spreader

apart. Doc. No. 62, Pl.'s Opp'n at 18. The court is well aware that difficulties can

arise between the court's obligations to interpret the claim terms in view of the

specification, but at the same time not improperly read limitations from the

specification into the claims. *See Phillips*, 415 F.3d at 1315, 1323. This case,

however, is not difficult -- the '066 Patent does not have to recite that the spreader

acts to separate the two lines attached to it because such fact is commonly

understood from the use of the word "spreader" itself in context of the two lines

being attached to it.

Conversely, the '066 Patent does not support Skyline's proposed

construction.  Skyline proposes that a "spreader," as used in the '066 Patent, is "a device that, when combined with another spreader, holds each pair of lines descending from the trolley far enough apart to create an angulation between them, which helps prevent the handlebar from swinging from side to side."  In other words, Skyline asserts that a "spreader" on its own does not hold apart the lines attached to it, but rather is a mere component, combined with the handlebar and other spreader, that acts to hold apart each pair of lines (*i.e.*, the right spreader, left spreader, and handlebar work together to hold lines 100 and 101 apart from lines 102 and 103, as shown in Figure 1 of the '066 Patent).  Skyline's proposed construction -- that a "spreader" is only a component of a device that spreads other items -- is not a common-sense construction of the term.

And more importantly, the specification does not support Skyline's construction.  Although Skyline is correct that the specification discloses that the angulation formed between the pairs of lines (as opposed to between each line) will be determined by the lengths of the lines and of the handlebar, *see* Doc. No. 47-27, ERI Defs.' Ex. B, '066 Patent at col. 4, lines 40-53, the specification neither suggests that a spreader on its own does not act to separate the lines attached to it, nor specially defines that a "spreader" performs its function only when combined with other parts of the trolley device.  The court therefore rejects that the

specification supports Skyline's proposed construction. *Cf. Merck & Co. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005) (explaining the "lexicographer rule" that an inventor may choose to give claim terms a meaning inconsistent with the ordinary meaning by explicitly providing such definition in the specification).

Finally, although not directly addressing the meaning of "spreader," the prosecution history appears to support that a person of ordinary skill in the art would understand that the term "spreader" as recited in the '066 Patent is used according to is common meaning and acts to keep the lines attached to it separated. The patent examiner initially rejected the claims of the '066 Patent as obvious in light of U.S. Patent Nos. 245,893 and 3,040,678. The patent examiner explained that several aspects of the invention of the '066 Patent were disclosed in the '893 Patent, which discloses a "swing" consisting of, among other things, a seat hanging from four lines attached to a V-shaped lever, which is suspended in the middle of a room by lines fastened to the walls. The examiner explained that the "spreaders" of the '066 Patent were disclosed in the '893 Patent as the sides of the seat. Doc. No. 47-33, ERI Defs.' Ex. H. That is, the sides of the seat correspond to the first and second spreader, and as shown in the figure of the '893 patent, the sides of the swing, like the spreaders of the '066 patent, separate the lines coming down from

the top of the apparatus.  *See* Doc. No. 47-34, ERI Defs.' Ex. I.

In sum, all of the intrinsic evidence supports that the term "spreader" was used in its plain and ordinary sense as a device that separates items (in this case, the two lines that attach to each spreader).  The dictionary definitions of "spreader" comport with this construction.  *See Phillips*, 415 F.3d at 1314 (noting that where claim instruction does not require elaborate interpretation, "general purpose dictionaries may be helpful").  For example, the Merriam Webster Dictionary defines "spreader" simply as "one that spreads," which can be, among other things, "a device as a bar holding two linear elements (as lines, guys, rails apart and usually taut."  Doc. No. 47-28, ERI Defs.' Ex. C.  The American Heritage Dictionary of the English Language defines "spreader," as, among other things, "a device, such as a bar, for keeping wires or stays apart."  Doc. No. 47-29, ERI Defs.' Ex. D.  *See also* Doc. No. 47-30, ERI Defs.' Ex. E (New Oxford American Dictionary -- "a device that spreads apart one thing from another"); Doc. No. 47-31, ERI Defs.' Ex. F (Random House Compact Unabridged Dictionary -- "a device for spacing or keeping apart two objects, as electric wires").

The only evidence suggesting a contrary definition of "spreader" is the Declaration of Kevin Smith, the named inventor on the '066 Patent, who asserts in summary fashion that the term should be construed as proffered by

Skyline.  Doc. No. 63-1, Smith Decl. ¶ 7.  As an initial matter, Smith's Declaration is wholly conclusory and is therefore simply not useful to the court.  *Phillips*, 415 F.3d at 1318.  But even if the court considers the Smith Declaration, Skyline's specialized definition of "spreader" is not proffered in the specification, and runs counter to the plain meaning that a "spreader" on its own separates other items (in this case, the pair of lines that attach to it).  Smith's Declaration is insufficient to rebut the plain meaning of "spreader," especially where the intrinsic evidence does not suggest this definition.  *Id.* (stating that the court should "discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent'" (quoting *Key Pharms.*, 161 F.3d at 716)); *see also Markman*, 52 F.3d at 983 (explaining that inventor testimony "cannot be relied on to change the meaning of the claims").

In sum, the court construes the term "spreader" as a device that separates at least two items.  As used in the '066 Patent, each spreader is attached to either side of the handlebar and separates the two lines attached it.

## B.   Infringement Analysis

Defendants argue that ERI's trolleys do not include a "first spreader" or a "second spreader" as recited in Claim 1, the only independent claim, and

therefore do not infringe any claims of the '066 Patent either literally or under the

doctrine of equivalents.  Based on the following, the court agrees that no genuine

issue of material fact exists that ERI's trolleys infringe the '066 patent.

### 1.   *Literal Infringement*

To find that an accused product literally infringes a patent claim,

"every limitation of the patent claim [must] be found in the accused device."

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed Cir.

2001) (quotations and citations omitted); *Allen Eng'g Corp. v. Bartell Indus.*, 299

F.3d 1336, 1345 (Fed. Cir. 2002) (explaining that a claim is literally infringed

"when each of the claim limitations 'reads on,' or in other words is found in, the

accused device" (citation omitted)).  Summary judgment on literal infringement is

proper "when no genuine issue of material fact exists, in particular, when no

reasonable jury could find that every limitation recited in the properly construed

claim either is or is not found in the accused device."  *Goldenberg v. Cytogen, Inc*.,

373 F.3d 1158, 1164 (Fed. Cir. 2004) (quotations omitted).

As described above, the court construes the term "spreader" as used in

Claim 1 of the '066 Patent to mean a device that separates at least two items.  In

context of the claim language, the claimed zipline trolley has a "first spreader" and

a "second spreader," each of which is attached to either side of the handlebar, and

each of which separates the two lines attached it.  Applying this construction to ERI's trolleys, there is no genuine issue of material fact that the ERI trolley models include either a "first spreader" or a "second spreader" as recited in the Claim 1. Although each of the four ERI trolley models at issue has two pairs of lines that run from the upper part of the trolley (the part of the trolley through which the cable runs), each pair of lines does not attach to a "spreader" on the handlebar. Rather, each pair of lines attaches to a single point on either side of the handlebar, and nothing on the handlebar acts to spread each line from one other.

In opposition, Skyline argues that the ERI trolleys have metal spreaders on each end of the handlebar because each end of the handlebar has a metal component with two holes in it -- one hole for the pair of lines running from the top of the trolley, and one hole below that for the sling lines to attach.  Skyline reasons that these metal components at the sides of the handlebar are "spreaders" because they separate the sling line coming from below the handlebar from the lines running from the top of the trolley.[5]  The court easily rejects this argument -- in fact, the sides of ERI's trolley handlebars join together, as opposed to separate, the sling lines and lines from the top of the trolley.  Simply put, the ends of the

---

[5] At the February 4, 2013 hearing, Skyline conceded that if the court construes the term "spreader" as proposed by Defendants, there is no genuine issue of material fact as to literal infringement.  The court nonetheless addresses Skyline's argument presented in its Opposition.

ERI's trolley handlebars are not "spreaders" in any sense of the word, and do not separate any lines.

Because no reasonable jury could find that any of the ERI trolley models have either a "first spreader" or a "second spreader" as claimed in the '066 patent, the court GRANTS Defendants' Motions for Summary Judgment to the extent they argue that the ERI trolleys do not literally infringe any claims of the '066 Patent.

### 2. *Doctrine of the Equivalents*

"Under the doctrine of the equivalents, a product or process that does not literally infringe the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Duramed Pharms., Inc. v. Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011) (internal citation and quotations omitted). "The 'essential inquiry' in any determination under the equivalents doctrine is whether 'the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention.'" *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011) (alteration in original) (internal quotations omitted).

"An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Wavetronix LLC*, 573 F.3d at 1360 (quoting *Eagle Comtronics, Inc. v. Arrow Commc'n Labs.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002)); *see also Siemens*, 637 F.3d at 1279 (explaining that under the doctrine of equivalents, a party cannot "avoid [ ] infringement liability by making only insubstantial changes and substitutions . . . which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law" (internal citation and quotations omitted)).  In determining whether an alleged equivalent includes only "insubstantial changes and substitutions," the Federal Circuit has applied the "function-way-result test . . . which asks whether an element of an accused product performs substantially the same function in substantially the same way to obtain substantially the same result as an element of the patented invention." *Siemens*, 637 F.3d at 1279.

"Although equivalence is a factual matter normally reserved for a fact finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence." *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997); *see also Deere & Co. v. Bush Hog, LLC*, --- F.3d ----, 2012 WL 6013405, at *5 (Fed. Cir. Dec. 4, 2012) ("If no reasonable jury

25

could find equivalence, then the court must grant summary judgment of no

infringement under the doctrine of equivalents." (citations omitted)).  "[F]or

example, courts properly refuse to apply the doctrine of equivalents 'where the

accused device contain[s] the antithesis of the claimed structure.'"  *Deere & Co.*,

2012 WL 6013405, at *4 (quoting *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472

F.3d 1338, 1345 (Fed. Cir. 2006)).  "In such a case, application of the doctrine of

equivalents would 'vitiate' a claim element[, such that] no reasonable jury could

determine two elements to be equivalent."  *Id.* (citing *Warner-Jenkinson Co. v.

Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997)); *see, e.g.*, *Asyst Techs., Inc. v.

Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (affirming summary judgment

of non-infringement because the "doctrine of equivalents cannot be extended to

reach an 'unmounted' system such as the [accused product] without vitiating the

'mounted on' limitation"); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d

1091, 1106 (Fed. Cir. 2000) (refusing to find infringement under the doctrine of

equivalents because "it would defy logic to conclude that a minority -- the very

antithesis of a majority -- could be insubstantially different from a claim limitation

requiring a majority, and no reasonable juror could find otherwise"); *Sage Prods.*,

126 F.3d at 1424-25 (affiming grant of summary judgment of no infringement

under the doctrine of equivalents because patent claimed a slot at the top of the

container, and accused product placed slot inside the container).

No reasonable jury could determine that the metal components at the ends of the handlebars of ERI's trolleys are substantially equivalent to the "first spreader" and the "second spreader" recited in Claim 1 of the '066 as properly construed.  Rather than separating the two lines from the top of the trolley, these metal components bring them together -- the antithesis of a "spreader."  These metal pieces therefore do not perform substantially the same function (*i.e.*, spreading) in substantially the same way to obtain substantially the same result as the spreaders recited in claim 1 of the '066 Patent.  Thus, because there is no genuine issue of material fact that ERI's trolleys include the substantial equivalent of a "first spreader" or a "second spreader," the court GRANTS Defendants' Motions for Summary Judgment on Plaintiff's patent infringement claim.

///

///

///

///

///

///

///

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS the Motions for Summary

Judgment on Count I of the Complaint.  Counts II-V of the Complaint remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 6, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Skyline Zipline Global, LLC v. Domeck et al.*, Civ. No. 12-00450 JMS-BMK, Order (1) Granting Defendants/Counterclaimants Todd Domeck, Experiential Resources, Inc., and Go Zip, LLC's Motion for Summary Judgment as to Count I (Patent Infringement) of the Complaint Filed on August 8, 2012, Doc. No. 47; and (2) Granting Defendant Maui Land and Pineapple Company, Inc.'s and Kapalua Land Company, Ltd.'s Motion for Summary Judgment as to Count I of the Complaint, Doc. No. 56