IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SKYLINE ZIPLINE GLOBAL, LLC, | ) | CIVIL NO. 12-00450 JMS-BMK |
| | ) | |
| Plaintiff, | ) | AMENDED ORDER |
| | ) | (1) GRANTING IN PART AND |
| vs. | ) | DENYING IN PART MAUI LAND |
| | ) | AND PINEAPPLE COMPANY, |
| TODD DOMECK; EXPERIENTIAL | ) | LTD.'S MOTION TO DISMISS, |
| RESOURCES, INC.; GO ZIP, LLC; | ) | DOC. NO. 21; AND |
| MAUI LAND AND PINEAPPLE | ) | (2) GRANTING IN PART AND |
| COMPANY, INC.; KAPALUA LAND | ) | DENYING IN PART BALDWIN |
| COMPANY, LTD.; BALDWIN | ) | BROTHERS, LLC DBA PIIHOLO |
| BROTHERS LLC dba PIIHOLO | ) | RANCH ZIPLINE'S PARTIAL |
| RANCH ZIPLINE; JOHN DOES 1-10; | ) | SUBSTANTIVE JOINDER IN |
| JANE DOES 1-10; DOE | ) | MAUI LAND AND PINEAPPLE |
| CORPORATIONS 1-10; and DOE | ) | COMPANY, LTD.'S MOTION TO |
| PARTNERSHIPS 1-10, | ) | DISMISS, DOC. NO. 31 |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

AMENDED ORDER (1) GRANTING IN PART AND DENYING IN PART
MAUI LAND AND PINEAPPLE COMPANY, LTD.'S MOTION TO
DISMISS, DOC. NO. 21; AND (2) GRANTING IN PART AND DENYING IN
PART BALDWIN BROTHERS, LLC DBA PIIHOLO RANCH ZIPLINE'S
PARTIAL SUBSTANTIVE JOINDER IN MAUI LAND AND PINEAPPLE
COMPANY, LTD.'S MOTION TO DISMISS, DOC. NO. 31

## I.  INTRODUCTION

This dispute stems from Cougar Mountain Adventures, Ltd.'s

("Cougar Mountain") efforts to enter into agreements to develop, install, and/or

operate zipline adventure courses for Defendants Maui Land and Pineapple

Company, Inc. ("MLPC") and Kapalua Land Company, Ltd. (collectively, "Kapalua Defendants"), as well as for Baldwin Brothers, LLC dba Piiholo Ranch Zipline ("Baldwin Brothers").[1]  As alleged in the August 8, 2012 Complaint, Cougar Mountain disclosed its intellectual property to its proposed subcontractor, Experimental Resources, Inc. ("ERI") and its owner Todd Domeck ("Domeck") (collectively "ERI Defendants"), who then used this information in developing and operating zipline operations for Kapalua Defendants and Baldwin Brothers without Cougar Mountain.  Cougar Mountain has since assigned the rights to its intellectual property to Plaintiff Skyline Zipline Global, LLC ("Skyline" or "Plaintiff"), which brought this action.

Currently before the court is Kapalua Defendants' Motion to Dismiss seeking dismissal of Skyline's claims for misappropriation of trade secrets and fraudulent concealment,[2] which Baldwin Brothers substantively joins (collectively, "Moving Defendants").  Based on the following, this Amended Order[3] GRANTS

---

[1]  The Complaint incorrectly identifies Baldwin Brothers as Piiholo Land, LLC and Piiholo Classic, LLC.  The parties have since stipulated and substituted these Defendants for Baldwin Brothers.  Doc. No. 34.

[2]  Skyline's claim for patent infringement was the subject of Motions for Summary Judgment brought by Defendants, which the court granted on February 6, 2013.  *See* Doc. No. 74.  Kapalua Defendants' instant arguments for dismissal of the patent infringement claim are therefore moot.

[3]  On March 13, 2013, Plaintiffs filed a Rule 60(a) Motion seeking to correct the court's
(continued...)

in part and DENIES in part the Motion to Dismiss, and GRANTS in part and

DENIES in part the Partial Substantive Joinder.

## II. **BACKGROUND**

### A.    **Factual Background**

As alleged in the Complaint, Skyline provides consultation services to

design, engineer, develop, install, and/or operate zipline adventure features and

canopy tours at various recreational facilities, and also manufactures, markets,

offers for sale, and sells zipline trolleys.  Compl. ¶ 18.  Skyline was assigned

Cougar Mountain's rights to its intellectual property, as well as any claims arising

from infringement or misappropriation of those rights.  *Id.* ¶ 17.  The present

dispute involves business dealings between Cougar Mountain and Defendants.

### 1.    ***Cougar Mountain's Business Relationship with ERI Defendants***

In July 2006, Cougar Mountain and ERI began discussions for ERI to

act as the subcontractor for some of Cougar Mountain's zipline course installations

and projects.  *Id.* ¶ 30.  To that end, on September 13, 2006, Cougar Mountain and

ERI executed a Confidentiality Agreement under which ERI agreed to hold in

confidence all information provided by Cougar Mountain and not use such

---

[3](...continued)
February 21, 2013 Order.  The court GRANTS the Rule 60 Motion -- this Amended Order
corrects a clerical mistake in the court's February 21, 2013 Order, which inadvertently stated
that it was granting Baldwin Brothers' Partial Substantive Joinder.

information for any other purpose.  *Id.* ¶¶ 32-33.

After signing this Agreement, Cougar Mountain shared with ERI its confidential and proprietary information including, among other things, confidential business information such as project proposals, pricing, sales, marketing, forecasts, financial models, business development plans, and financial and business model information, as well as technical information regarding zipline course and component design, fabrication, manufacture, assembly, installation, operation, and maintenance.  *Id.* ¶¶ 33-34.  Cougar Mountain also provided ERI on-site zipline training from September 2006 to January 2007, and taught ERI how to install, operate, and maintain zipline courses incorporating its proprietary technology, which allows for longer and faster-braking zipline courses.  *Id.* ¶ 36. Given that ERI's experience was limited to existing zipline course technology that runs at slower speeds and uses gravity braking, Cougar Mountain's proprietary information on high-speed zipline courses was new for ERI.  *Id.* ¶ 38.

### 2.    *Cougar Mountain's Business Dealings with Kapalua Defendants and Baldwin Brothers*

In the meantime, during the summer and fall 2006, Cougar Mountain met separately with Kapalua Defendants and Baldwin Brothers to discuss developing and operating zipline courses on each of their properties.  *Id.* ¶¶ 21, 27. In particular, Cougar Mountain and Kapalua Defendants began exploring the

4

formation of a jointly-owned operating company to accomplish the zipline project, *id.* ¶ 23, while Baldwin Brothers was interested in having a zipline project developed for it. *Id.* ¶ 27. As a result of these discussions, Cougar Mountain prepared and delivered course designs for both Kapalua Defendants and Baldwin Brothers. *Id.* ¶¶ 25, 29.

In October 2006, Cougar Mountain introduced ERI to Kapalua Defendants and Baldwin Brothers, and planned to use ERI as the subcontractor for both zipline courses. *Id.* ¶¶ 39-42. To that end, Cougar Mountain disclosed to ERI the full service drawings for the courses, as well as proprietary information for manufacturing, mapping, and rigging the courses. *Id.*

Over the next several months, Cougar Mountain continued to move each project along. As to the Baldwin Brothers project, on October 6, 2006, Cougar Mountain delivered to Baldwin Brothers a business plan and proposal for the development of the zipline course, which included a discussion of Cougar Mountain's intellectual property and terms for Baldwin Brothers to take a license to the intellectual property. *Id.* ¶ 43. It was Cougar Mountain's understanding that Baldwin Brothers planned to go forward with the project after finalizing a real estate deal for some of the land for the zipline course. *Id.*

As to the Kapalua project, in October 2006, Cougar Mountain and

ERI visited Kapalua Defendants to inspect the site and work on the business arrangement.  *Id.* ¶ 44.  On October 26, 2006, ERI delivered to Cougar Mountain a build quote for the subcontractor installation work, which was based on the specifications prepared and designed by Cougar Mountain for the Kapalua course.  *Id.* ¶ 45.  On October 27, 2006, Cougar Mountain sent to Kapalua Defendants a "Skyline Development Proposal," which included discussion of Cougar Mountain's intellectual property, terms for a joint venture for developing and operating the Kapalua course, and terms for Kapalua Defendants to take a license to Cougar Mountain's intellectual property as a residual model, should Cougar Mountain not have ownership interest in the Kapalua zipline.  *Id.* ¶ 46.

In November 2006, Cougar Mountain presented its business plan to the Kapalua Board of Directors.  *Id.* ¶ 47.  This plan, which identified ERI as a subcontractor installer, included course design, cost analysis, a logistics study for projected volume, cash flow and profit analyses, and management information.  *Id.*  During the meeting, Cougar Mountain again informed Kapalua Defendants that it owned intellectual property regarding zipline course designs and components, including its proprietary zipline trolley design.  *Id.* ¶ 48.  Cougar Mountain also displayed a sample trolley and harness to be used in the project.  *Id.*

On December 19, 2006, Cougar Mountain and MLPC entered into a

Letter of Intent and a Confidentiality Agreement regarding the Kapalua zipline project. *Id.* ¶ 50. According to the Letter of Intent, the parties planned to execute a Joint Venture Agreement and an Operating Agreement, which both outlined that Cougar Mountain would prepare the zipline course design, each party would contribute to a capital project budget, and each party would fund pre-opening operating expenses. *Id.* ¶ 51.

After several revisions were circulated, in February 2007 Kapalua Defendants stopped communicating with Cougar Mountain. *Id.* ¶ 53. In a February 28, 2007 letter, MLPC notified Cougar Mountain that it was cancelling the Letter of Intent due to agreements not being finalized within the due diligence period. *Id.* ¶ 57. Around this same time, ERI and Baldwin Brothers also stopped communicating with Cougar Mountain. *Id.* ¶¶ 55-56.

### 3.   *Cougar Mountain Learns of Kapalua Defendants' Zipline Activities*

In May 2007, Kevin Smith, principal of Cougar Mountain, read in the newspaper that Kapalua Defendants were developing a zipline course. *Id.* ¶ 58. In a May 16, 2007 email, Smith asked ERI whether it was involved in the Kapalua zipline, and ERI responded that it was not. *Id.* ¶ 59. As a result, Cougar Mountain asserts that it had no reason to believe the Kapalua zipline course would include its confidential information and proprietary technology. *Id.*

In September 2009, Smith saw photos of the Kapalua zipline course, which included Cougar Mountain's tower design and braking system, and employed Cougar Mountain's proprietary and patent-pending trolleys. *Id.* ¶ 60. It is Skyline's belief that ERI manufactured, distributed, used, sold, and offered for sale the trolleys used on the Kapalua zipline course. *Id.* ¶ 72. After conducting due diligence, however, Cougar Mountain believed that Kapalua Defendants were closing the zipline course. *Id.* ¶ 60. In fact, however, Kapalua Defendants operated the zipline course until mid-December 2009, when MLPC entered into an arrangement to transfer the operations to ERI and another of Domeck's companies, GoZip. *Id.* ¶ 64. Under this arrangement, MLPC receives lease and license income from ERI and GoZip, who both operate the zipline course. *Id.*

### 4.   *Cougar Mountain Learns of Baldwin Brothers' Zipline Activities*

Also around September 2009, Smith learned that Baldwin Brothers had a zipline course, and website materials mentioned ERI in conjunction with the course. *Id.* ¶¶ 61-62. It is Skyline's belief that ERI manufactured, distributed, used, sold, and offered for sale the trolleys used on the Baldwin Brothers' zipline course. *Id.* ¶ 72.

In March 2010, Baldwin Brothers was informed it was infringing Plaintiff's intellectual property. *Id.* ¶ 65. Despite this notice, Baldwin Brothers

continued its activities.  *Id.* ¶ 66.

**B.     Procedural Background**

On August 8, 2012, Skyline filed its Complaint asserting claims for (1) patent infringement against all Defendants (Count I); (2) breach of contract against Domeck and ERI (Count II); (3) trade secret misappropriation against all Defendants (Count III); (4) fraudulent concealment against all Defendants except GoZip (Count IV); and (5) tortious interference against Domeck and ERI (Count V).

On October 31, 2012, Kapalua Defendants filed their Motion to Dismiss, Doc. No. 21, and Baldwin Brothers filed its Partial Substantive Joinder on November 7, 2012.  Doc. No. 31.  Skyline filed an Opposition on January 14, 2013, Doc. No. 61, Baldwin Brothers filed a Reply on January 17, 2013, and Kapalua Defendants filed a Reply on January 18, 2013.  Doc. No. 72.  A hearing was held on February 4, 2013.

**III.  <u>STANDARDS OF REVIEW</u>**

**A.     Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.  Factual allegations that only permit

the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## B.  Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In its pleadings, the plaintiff must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. *Id.* (citation and quotation signals omitted).  However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (citations omitted)).

11

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support claims."  *Hydrick v. Hunter*, 449 F.3d 978, 988 (9th Cir. 2006) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## IV.  ANALYSIS

Moving Defendants argue that the Complaint fails to state plausible claims for either trade secret misappropriation or fraud/fraudulent concealment. The court addresses each claim in turn.

### A.      Trade Secret Misappropriation (Count III)

In support of its trade secret misappropriation claim, Skyline asserts that its trade secrets include, among other things, its confidential and proprietary information concerning its design, fabrication, manufacture, assembly, installation, operation, and maintenance of zipline courses, as well as its confidential financial and business model information concerning project proposals, pricing, sales, marketing, forecasts, financial models, and business development plans.  Compl. ¶¶ 98-99.  Skyline further asserts that pursuant to the Confidentiality Agreement,

Cougar Mountain disclosed to ERI Defendants its trade secrets and introduced ERI as its subcontractor to Kapalua Defendants and Baldwin Brothers.  *Id.* ¶¶ 101-102.  Finally, Skyline asserts that instead of proceeding with Cougar Mountain, MPLC and Baldwin Brothers went forward building the zipline courses with ERI Defendants even though they knew that ERI used Cougar Mountain's technology without its authorization.  *Id.* ¶¶ 104, 106.

Moving Defendants argue that these allegations fail to state a plausible claim for trade secret misappropriation against them because (1) Cougar Mountain did not take reasonable efforts to keep its proprietary information secret; and (2) the claim is time-barred where Cougar Mountain should have discovered the alleged misappropriation in 2007.  Based on the following, the court rejects both these arguments.

1.    *Whether Plaintiff's Zipline Technology Constitutes "Trade Secrets"*

Hawaii has adopted the Uniform Trade Secrets Act ("UTSA"), *see* Hawaii Revised Statutes ("HRS") Ch. 482B, which defines a "trade secret" as:

> information, including a formula, pattern, compilation, program device, method, technique, or process that:
> > (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable
under the circumstances to maintain its secrecy.

HRS § 482B-2.  As this definition makes plain, "[o]nce the data that constitute a

trade secret are disclosed to others, or others are allowed to use those data, the

holder of the trade secret has lost his property interest in the data." *Ruckelshaus v.*

*Monsanto Co.*, 467 U.S. 986, 1011 (1984).  Thus, the holder of the trade secret

must take efforts "reasonable under the circumstances to prevent disclosure of the

alleged trade secret to those who may exploit it to the detriment of the owner,"

*Uhlig LLC v. Shirley*, 2012 WL 2923242, at *16 (D. S.C. July 17, 2012), and may

disclose it only to others who "are obligated to keep that information secret."

*Weco Supply Co. v. Sherwin-Williams Co.*, 2012 WL 1910078, at *7 (E.D. Cal.

May 25, 2012).

Moving Defendants argue that Cougar Mountain's zipline technology

does not constitute "trade secret" information because as alleged in the Complaint,

Cougar Mountain disclosed such information to Moving Defendants without

obligating them to keep such information confidential.  In support of this

argument, Moving Defendants point to the allegations in the Complaint that

Cougar Mountain provided to them development proposals, which included

"discussions of Plaintiff's intellectual property."  Compl. ¶¶ 43, 46.  The

Complaint further asserts that during a Kapalua Board of Directors meeting, Cougar Mountain (1) presented a business plan that included course design, cost analysis, a logistics study for projected volume, cash flow and profit analyses, and management information, *id.* ¶ 47; (2) informed Kapalua Defendants that it owned intellectual property regarding zipline course designs and components, including its proprietary zipline trolley design; *id.* ¶ 48; and (3) displayed a sample trolley and harness to be used in the project. *Id.* Given these allegations in the Complaint, Moving Defendants' interpretation of Skyline's misappropriation claim is not unfounded.

But in its opposition, Skyline disavows that its misappropriation claim is based on the theory that Cougar Mountain disclosed trade secret information directly to Moving Defendants prior to having them sign a confidentiality agreement.[4] Rather, according to Skyline, it provided only general information to Moving Defendants and the basis of its trade secret misappropriation claim is that Moving Defendants knew of Cougar Mountain's confidential relationship with ERI Defendants and used ERI Defendants as their vendor knowing that ERI Defendants

---

[4] As alleged in the Complaint, on December 19, 2006, MPLC executed a confidentiality agreement at the same time that it entered into a letter of intent regarding the Kapalua zipline course. *See* Compl. ¶ 50. The parties do not dispute that information disclosed to Kapalua Defendants after this confidentiality agreement was signed constitutes trade secret information.

were using Cougar Mountain's trade secret information.[5]  Doc. No. 61, Pl.'s Opp'n at 21.

Skyline's proffered theory of liability finds support in the Complaint's allegations.  For example, the Complaint identifies that Cougar Mountain's trade secrets include:

- Plaintiff's confidential and proprietary information concerning zipline course and component design, fabrication, manufacture, assembly, installation, operation and maintenance, including proprietary zipline course and component designs, drawing, photographs, specification, engineering drawings, and manufacturing specifications and tolerances, plans and know-how for designing, manufacturing, fabricating, constructing, assembling, installing, operating and maintaining zipline courses, zipline towers, trolleys, anchor systems, braking systems, electromagnet braking systems, wheels, dies, casts, axles, wheel housings, among other course components, and how to assemble course and system components, Compl. ¶ 98;

- Plaintiff's confidential business contacts and other confidential business information, including confidential project proposals, pricing, sales, marketing, forecasts, financial models, business development plans and other confidential financial and business model information, *id.* ¶ 99.

The Complaint further asserts that Cougar Mountain shared this vast trade secret information with ERI Defendants under the Confidentiality Agreement, *id.*

---

[5] Skyline further suggests that even if it had disclosed any trade secret information to Moving Defendants, the need for confidentiality might be inferred from the particular circumstances and "[d]iscovery in this action may support such a contention."  Doc. No. 61, Pl.'s Opp'n at 22-23.  The Complaint makes no such allegations supporting this theory and the court therefore need not address it.

16

¶¶ 33-34, 101-02, and that Moving Defendants took advantage of ERI Defendants'

knowledge of Cougar Mountain's trade secrets when ERI developed and operated

Moving Defendants' zipline courses.  *Id.* ¶¶ 103-06.  In other words, a fair reading

of the Complaint is that Moving Defendants obtained this trade secret information

through their relationships with ERI Defendants.

In light of Skyline's abandonment of a trade secret claim based on

Cougar Mountain's direct disclosures to Moving Defendants, the court DENIES

the Motion to Dismiss the trade secret misappropriation claim.  The trade secret

misappropriation claim is limited to the allegation that Moving Defendants

obtained trade secret information through ERI Defendants and/or that Kapalua

Defendants obtained trade secret information after MPLC signed the

Confidentiality Agreement.  If Skyline wishes to allege any additional theories of

trade secret misappropriation, it must attempt to do so by filing an appropriate

motion to amend the Complaint pursuant to Rule 15.

### 2.   *Statute of Limitations*

The statute of limitations for a Hawaii UTSA claim is governed by

HRS § 482B-7, which provides:

> An action for misappropriation must be brought within
> three years after the misappropriation is discovered or by
> the exercise of reasonable diligence should have been
> discovered.  For the purposes of this section, a continuing

17

misappropriation constitutes a single claim.

Although the Hawaii Supreme Court has not interpreted this provision specifically, the contours of the "discovery rule" articulated in § 482B-7 are well understood in this jurisdiction and comport with other jurisdictions that have adopted the UTSA.  In particular, the discovery rule does not place the burden on a plaintiff to learn every discoverable fact; rather, the relevant question is whether the plaintiff knew of facts that would cause a reasonable individual to perform a further inquiry.  For example, *Vidinha v. Miyaki*, 112 Haw. 336, 341, 145 P.3d 879, 884 (Haw. App. 2006), explains:

> As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause.  We have clarified that in this context, reasonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the fact upon which his right to recovery is premised.  As we have stated: "[T]here are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful.  This is what is meant by reasonable diligence."  Put another way, "[t]he question in any given case is not, what did the plaintiff know of the injury done him?  [B]ut, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him?"  While reasonable diligence is an objective test, "[i]t is sufficiently flexible . . . to take into account the difference[s] between persons and their capacity to meet

18

> certain situations and the circumstances confronting them at the time in question."  Under this test, a party's actions are evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others."

(quoting *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005)); *see Ass'n of Apartment Owners of Newtown Meadows ex. rel. its Bd. of Dirs. v. Venture 15, Inc.*, 115 Haw. 232, 271, 167 P.3d 225, 278 (2007); *see also, e.g.*, *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012) ("[W]hen there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit), the limitations period begins, even though the plaintiff has not conducted such an investigation." (quotations omitted)).  Reasonable diligence "means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist."  *Venture 15, Inc.*, 115 Haw. at 270, 167 P.3d at 277 (citation, quotation signals, and brackets omitted).  Determining the date that a plaintiff knew or should have known of her claims is generally a question for the jury.  *Blair v. Ing*, 95 Haw. 247, 267, 21 P.3d 452, 472 (2001).

The alleged misappropriations began sometime in 2007 when Defendants ceased communicating with Cougar Mountain and they decided to develop zipline courses using Cougar Mountain's trade secret information. Because this action was brought over five years after these events, Skyline must plead facts plausibly suggesting that it did not learn of the misappropriation -- and should not have discovered such misappropriation through the use of reasonable diligence -- until August 8, 2009, three years before this action was filed.  To that end, the Complaint asserts that although Cougar Mountain learned that Kapalua Defendants went forward with a zipline in May 2007, Cougar Mountain contacted ERI Defendants, who denied any involvement with the project.  Compl. ¶¶ 58-59. The Complaint therefore asserts that Cougar Mountain had no reason to know that the zipline used Cougar Mountain's confidential information until it saw photographs of the ziplines in September 2009.  *Id.*  As to Baldwin Brothers, the Complaint asserts that Cougar Mountain had no reason to know of Baldwin Brothers' use of Cougar Mountain's trade secret information until September 2009 when Cougar Mountain discovered through the Internet that Baldwin Brothers had a zipline course involving ERI Defendants.  *Id.* ¶¶ 61-62.

Moving Defendants argue that these allegations fail to plausibly allege that Cougar Mountain conducted a reasonable investigation.  According to Moving

Defendants, Cougar Mountain should have performed a more in-depth investigation beyond simply taking ERI Defendants' denials at face value.  Doc. No. 21-1, Kapalua Defs.' Mot. at 21-22.  Instead, Moving Defendants assert that Cougar Mountain should have communicated directly with Moving Defendants to ensure that neither was using Cougar Mountain's trade secrets.  The court rejects this argument at this pleadings stage.

As made clear from the allegations of the Complaint, Cougar Mountain performed *some* due diligence after learning that Kapalua Defendants were proceeding with a zipline course -- it contacted ERI Defendants, who denied any involvement with the project.  Contacting only ERI Defendants is not on its face unreasonable -- as explained above, the basis of Skyline's misappropriation claim is that Cougar Mountain disclosed its trade secrets to ERI Defendants, who then used that information in developing and operating zipline courses for Moving Defendants.  It is therefore plausible (at least at this pleadings stage) that ERI Defendants' assurances that they were not involved with Kapalua Defendants would end a reasonable investigation -- without ERI Defendants' involvement, Kapalua Defendants would have no access to Cougar Mountain's trade secret information.[6]

---

[6]  Baldwin Brothers argues that Cougar Mountain had a duty to inquire as to Baldwin

(continued...)

The court therefore DENIES Moving Defendants' Motion to Dismiss Count III of the Complaint.

## B.      Fraud/Fraudulent Concealment (Count IV)

Count IV asserts that all Defendants except for GoZip are liable for fraud and/or fraudulent concealment.

Under Hawaii law, the elements of a fraud claim are that: "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them." *Shoppe v. Gucci Am., Inc*., 94 Haw. 368, 386, 14 P.3d 1049, 1067 (2000) (internal quotation marks and citations omitted).

A claim for "fraudulent concealment" is simply a type of fraud based on "fraud by omission and concealment, and not just affirmative conduct." *Tachibana v. Colo. Mountain Dev., Inc*., 2011 WL 1327113, at *3 n.7 (D. Haw. Apr. 5, 2011).  The Restatement (Second) of Torts, which Hawaii follows, explains the tort of fraudulent concealment as follows:

---

[6](...continued)
Brothers' activities once it learned of the Kapalua zipline.  This argument is even weaker than that of Kapalua Defendants -- based on the allegations in the Complaint, the court rejects that Cougar Mountain would have a duty to investigate Baldwin Brothers simply because it knew of Kapalua Defendants' zipline course.

22

> One who fails to disclose to another a fact that he knows
> may justifiably induce the other to act or refrain from
> acting in a business transaction is subject to the same
> liability to the other as though he had represented the
> nonexistence of the matter that he has failed to disclose,
> if, but only if, he is under a duty to the other to exercise
> reasonable care to disclose the matter in question.

*Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010) (quoting

Restatement (Second) of Torts § 551)).  As a result, a defendant may be liable for a

"fraudulent concealment" where it (1) fails to disclose a fact that it knows may

cause the plaintiff to act; and (2) the defendant had a duty to the plaintiff to

exercise reasonable care to disclose that fact.  *See Television Events & Mktg., Inc.*

*v. Amcon Distrib. Co.*, 488 F. Supp. 2d 1071, 1081 (D. Haw. 2006).  Whether a

claim is based on a misrepresentation or an omission, it must be pled with

particularity.  *See Smallwood v. NCsoft Corp*., 730 F. Supp. 2d 1213, 1232-33 (D.

Haw. 2010).

    The Complaint fails to assert a plausible fraud claim against Kapalua

Defendants based on either a misrepresentation or an omission.[7]  Although the

Complaint asserts generally that Defendants made "false statements," *see* Compl.

¶ 123, such a generalized allegation is insufficient to meet Skyline's burden under

---

[7]  Baldwin Brothers also seeks dismissal of the fraud claim, and in response, Skyline agreed to dismiss this claim without prejudice.  Doc. No. 61, Pl.'s Opp'n at 23.  The court therefore GRANTS the Motion as to Baldwin Brothers.

Rule 8, much less the more rigorous requirements of Rule 9 that apply to these claims.  Indeed, the only misrepresentation alleged in the Complaint is ERI Defendants' statement to Cougar Mountain that they were not working on the Kapalua zipline project.  *Id.* ¶ 121.  Needless to say, this alleged misrepresentation is by ERI Defendants -- not Kapalua Defendants -- and the Complaint asserts no basis to impute this misrepresentation to Kapalua Defendants.  And to the extent Skyline bases this claim on Kapalua Defendants' failure to disclose its relationship with ERI Defendants, the Complaint fails to assert any basis to find that Kapalua Defendants had such a duty.

In opposition, Skyline asserts that its claim against Kapalua Defendants is for constructive fraud, which exists "where the parties to a transaction have a special confidential or fiduciary relation which affords the power and means to one to take undue advantage of, or exercise undue influence over, the other."  *See* Doc. No. 61, Pl.'s Opp'n at 25 (quoting *Combs v. Case Bigelow & Lombardi*, 122 Haw. 58, 222 P.3d 465 (Haw. App. 2010) (unpublished)).  Whatever Skyline's theory of fraud may be, it does not obviate Skyline's obligation to plead the elements of a fraud claim, and plead them with particularity.  And in any event, the Complaint does not assert any facts suggesting that Cougar Mountain and Kapalua Defendants had a fiduciary relationship, or

even a confidential relationship, at the time of the alleged fraud.  The court therefore GRANTS Kapalua Defendants' Motion to Dismiss Count IV, with leave to amend.

## V.  CONCLUSION

Based on the above, the court GRANTS in part and DENIES in part Kapalua Defendants' Motion to Dismiss, and GRANTS in part and DENIES in part Baldwin Brothers' Partial Substantive Joinder.  Skyline's fraud/fraudulent concealment claim is dismissed as to Baldwin Brothers, and is dismissed as to Kapalua Defendants with leave to amend.  Remaining in this action are Skyline's claim for misappropriation of trade secrets as to Moving Defendants, as well as Skyline's claims against non-moving Defendants.

Skyline is granted leave until March 15, 2013[8] to file a First Amended Complaint asserting a fraud claim against Kapalua Defendants.  No other new or different claims may be pled.  Skyline is further notified that a First Amended Complaint supersedes the Complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the court will treat the Complaint as nonexistent, *Ferdik*,

---

[8]  Because the original February 21, 2013 Order provided this March 15, 2013 deadline, Plaintiffs' Rule 60 Motion does not affect this deadline, and Plaintiffs have not requested an extension, the court reiterates in this Order the March 15, 2013 deadline for filing a First Amended Complaint.

963 F.2d at 1262, and therefore Skyline should re-allege all claims it wishes to

pursue in this action, except for the already-dismissed patent infringement claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 15, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Skyline Zipline Global, LLC v. Domeck et al.*, Civ. No. 12-00450 JMS-BMK, Amended Order (1) Granting in Part and Denying in Part Maui Land and Pineapple Company, Ltd.'s Motion to Dismiss, Doc. No. 21; and (2) Granting in Part and Denying in Part Baldwin Brothers, LLC dba Piiholo Ranch Zipline's Partial Substantive Joinder in Maui Land and Pineapple Company, Ltd.'s Motion to Dismiss, Doc. No. 31